11. On October 4, 2011, an Ambulatory Assessment Evaluation was completed and signed by Susan Ray, SSD, under the direction of Dr. Gerard. (Exh. 21, 24, 27) The Beneficiary's diagnosis codes were listed as 715.90, 733.00, and 401.9. (Id.) It confirmed with checkmarks that the Beneficiary was not ambulatory and could not self propel with her arms or legs. (Id.) A specific SOAP note stated the Beneficiary was "totally assisted" and "patient does not ambulate." (Id.)

12. On October 4, 2011, a Functional Mobility Evaluation was completed and signed by Susan Ray, SSD, under the direction of Dr. Gerard. (Exh. 21, 24, 27) The same diagnosis codes that were on the Assessment Evaluation were documented on the Mobility Evaluation. (Id.) One SOAP note stated, "PT suffers from joint degenerative disease is @ high risk of falls." (Id.) In regards unsuitable DME equipment a note stated "Patient using a standard w/c with no lateral support" therefore, she could not use a cane or walker or standard wheelchair. (Id.) Specifically stated was the fact that "patient has lost ability to walk or stand." (Id.) She was noted to be a "patient under total assist for all MRADL's," and did not have cognitive capabilities in performing Mobility Related Activities of Daily Living (MRADL's). (Id.) It was documented that the Beneficiary was entirely limited and could not use a cane, walker, standard wheelchair, or power wheelchair, and required full assistance performing MRADL's but she was willing to do so. (Id.) In addition a manual wheelchair, standard power wheelchair, not scooter, would be beneficial because she lacked extremity strength and trunk stability with a specific note stating "patient not able to operate power scooter or wheelchair." (Id.) The notes revealed that her skin integrity would be extensively compromised without a Tilt-in-Space wheelchair to reposition her body compromised by the end stage osteoporosis, multiple falls, hip and knee replacements, Aspasia, and an auto immune system disease further causing pain in her joints with arthritis symptoms of Sjogren's syndrome leaving her totally dependent on caregivers to move her extremities. (Id.)

13. On October 4, 2011 a prescription for a manual Tilt-in-Space wheelchair was written with the objective assessment of a pressure realigning requirement. (Exh. 21, 24, 27) The RX is signed by Dr. Mark Gerard, M.D. (Id.)

14. The October 5, 2011, Delivery Ticket/Work Order lists all line items at issue that were delivered and received by the Beneficiary. (Exh. 27) The Delivery Ticket was signed by Lisa Lachance, RN, confirming receipt and agreement to the terms and conditions. (Id.) On October 6, 2011, an additional item listed as elevating leg extension was delivered. (Id.)

15. The October 5, 2011, Patient Equipment Education and Home Safety Checklist indicated that the Tilt-in-Space wheelchair was delivered to the Beneficiary. (Exh. 27) The equipment information, procedures, and environmental requirements were checked. (Id.) Safety usage instructions were also reviewed. (Id.)

16. On October 5, 2011, the Purchased Items Notification form and the Equipment Warranty Information form for the Tilt-in-Space wheelchair were both signed for by Lisa Lachance, a Registered Nurse at her facility. (Exh. 21, 24, 27)

17. On October 5, 2011, a Detailed Product Description form was signed by Dr. Mark Gerard, M.D. (Exh. 21, 24, 27) It identified that a "Manual Tilt-in-Space Wheelchair – PDG with accessories was ordered and shipped to the Beneficiary. (Id.) The ICD-9 codes used for the order included 715.90, 733.00, and 401.9. (Id.)

18. The April 30, 2011, Tilt-in-Space Post-Intake Medical Evaluation form signed by Susan Ray SSD and Dr. Mark Gerard, M.D. indicated that the Beneficiary used the wheelchair 5-7 days a week for 5 or more hours a day and it was continuing to meet her medical needs. (Exh. 27) Specifically it stated, "no skin breakdown in new w/c and less facial grimaces of discomfort."

19. On July 3, 2013, the Appellant testified that the Tilt-in-Space Wheelchair and accessories were delivered to the Beneficiary on October 5, 2011. (Exh. 21) He further confirmed that many of his clients live in Skilled Nursing Facilities, but in the custodial care section of the facility. This Beneficiary was eligible to receive the wheelchair. He also stated his only product is the Tilt-in-Space wheelchair and 90% of his clients are Medicare patients. His rational for medical necessity was that the generative joint diseased 91½ year old Beneficiary with other end of life medical complications would be bed ridden all day and night without a Tilt-in-Space wheelchair. Due to her dependence on caregivers she required the Tilt-in-Space wheelchair with clinical and functional applications to change positions every few hours for proper body alignment and for pressure relief. The Tilt-in-Space wheelchair would provide this Beneficiary with the necessary change in position capability because she could not independently shift her body weight or change position without grimacing with discomfort. The accessories were also medically necessary and a mandatory part of the wheelchair that the physician prescribed and the Social Services Director also found necessary. She spent up to 12-18 hours a day in the Tilt-in-Space wheelchair meeting the requirement for payment. The Beneficiary would be at a higher risk for skin breakdown and her sitting tolerance would be compromised in any other wheelchair making it medically reasonable and necessary.

20. The Remittance Notice for ▓▓▓ HIC ***▓▓▓ Account #038203, with Cair Medical as the provider, shows that the following procedure codes were billed: E1161[1], E2231[2], E2601[3], E2611[4], E0955[5], E0973[6], E0990[7], K0040[8], E0951[9], E0971[10], E0978[11], E1028[12], K0108[13], K0046[14]. (Exh. 11)

---

[1] HCPCS Code E1161 Manual adult size wheelchair, (includes tilt in space)
[2] HCPCS Code E2231 Manual wheelchair accessory, solid seat support base (replaces sling seat) includes any type mounting hardware
[3] HCPCS Code E2601 General use wheelchair seat cushion, width less than 22 inches, any depth
[4] HCPCS Code E2611 General use wheelchair back cushion, width less than 22 inches, any height, including any type mounting hardware
[5] HCPCS Code E0955 Wheelchair accessory, headrest, cushioned, any type, including fixed mounting hardware, each
[6] HCPCS Code E0973 Wheelchair accessory, adjustable height, detachable armrest, complete assembly, each
[7] HCPCS Code E0990 Wheelchair accessory, elevating leg rest, complete assembly, each
[8] HCPCS Code K0040 Adjustable angle footplate, each
[9] HCPCS Code E0951 Heel loop/holder, any type, with or without ankle strap, each
[10] HCPCS Code E0971 Manual wheelchair accessory, anti-tipping device, each
[11] HCPCS Code E0978 Wheelchair accessory, positioning belt/safety belt/pelvic strap, each
[12] HCPCS Code E1028 Wheelchair accessory, manual swingaway, retractable or removable mounting hardware for joystick, other control interface or positioning accessory
[13] HCPCS Code K0108 Wheelchair component or accessory, not otherwise specified
[14] HCPCS Code K0046 Elevating legrest, lower extension tube, each

Appellant: Care Medical
Beneficiary: ▓▓▓▓▓

## Legal Framework

I. ALJ Review Authority

### A. Jurisdiction

An individual who, or any organization that, is dissatisfied with the reconsideration of an initial determination is entitled to a hearing before the Secretary of the Department of Health and Human Services ("HHS"), provided there is a sufficient amount in controversy and a request for hearing is filed in a timely manner. Section 1869(b)(1)(A) of the Act.

In implementing this statutory directive, the Secretary has delegated her authority to administer the nationwide hearings and appeals system for the Medicare program to OMHA. See 70 Fed. Reg. 36386, 36387 (June 23, 2005). The ALJs within OMHA issue the final decisions of the Secretary, except for decisions reviewed by the Medicare Appeals Council. Id.

A hearing before an ALJ is available only if the remaining amount in controversy is $130 or more. See CMS Ruling 02-1, 67 Fed. Reg. 62478, 62480 (October 7, 2002); see also 774 Fed. Reg. 48976 (September 25, 2009). The request for hearing is timely filed if filed within 60 days after receipt of a QIC decision. 42 C.F.R. § 405.1002.

### B. Scope of Review

Under the Centers for Medicare and Medicaid Services' ("CMS") implementation policy for the Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000 (BIPA), Pub. Law 106-554, app. F, 114 Stat. 2763, 2763A-463, and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), Pub. Law 108-173, 117 Stat. 2066, all initial determinations by CMS-contracted carriers prior to January 1, 2006, are governed by the ALJ hearing procedures set forth at 20 C.F.R. §§ 404.929 through 404.961 and 42 C.F.R. § 405.855. See 70 Fed. Reg. 11420, 11424-26 (Mar. 8, 2005).

The issues before the ALJ include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in the Appellant's favor. However, if evidence presented before or during the hearing causes the administrative law judge to question a fully favorable determination, he or she will notify the Appellant and will consider it an issue at the hearing. 20 C.F.R. § 404.946(a).

### C. Standard of Review

"The [Office of Medicare Hearings and Appeals]... is staff[ed] with Administrative Law Judges (ALJs) who conduct 'de novo' hearings [...]." 70 Fed. Reg. 36386 (June 23, 2005); see also In re Atlantic Anesthesia Associates, P.C., MAC (June 2004) (stating that "[a]n ALJ qualified and appointed pursuant to the Administrative Procedure Act acts as an independent finder of fact in conducting a hearing pursuant to section 1869 of the Act" and therefore must conduct a "de novo consideration of the facts and law").

Appellant: Calr Medical
Beneficiary: ▮▮▮▮

II. Principles of Law

   A. *Statutes and Regulations*

The Medicare Part B program entitles a beneficiary to have payment made to him or her on his or her behalf for medical and other health services. Section 1832(a)(1) of the Act; 42 C.F.R. §§ 410.3(a)(1) and 410.10(h). Coverage of medical and other health services is qualified by the overarching principles of sections 1862(a) and 1833(e) of the Act.

Section 1833(e) of the Act states that no payment shall be made to any provider of service unless supported by sufficient information. See also 42 C.F.R. § 424.5(a)(6).

Section 1862(a)(1) of the Act limits Medicare coverage and payment to items and services that are reasonable and necessary for the diagnosis and treatment of an illness or injury, or to improve the functioning of a malformed body member. See also 42 C.F.R. § 411.15(k)(1).

Section 1879 of the Act provides that when Medicare excludes payment and coverage pursuant to Section 1862(a)(1) of the Act, payment may nevertheless be made for the items or services, if neither the beneficiary nor the provider or supplier knew, or could not reasonably be expected to have known, that the items or services would not be covered or payable by Medicare. See also 42 C.F.R. § 411.406.

   B. *Policy and Guidance*

Section 1871(a)(2) of the Act states that unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination ("NCD"), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. See also 42 C.F.R. § 405.860.

NCD 280.1 for Wheelchair Options and Accessories and 280.3 for Mobility Assistive Equipment provides that wheelchairs are covered if a patient meets Mobility Assistive Equipment clinical criteria. NCD 280.1 defines DME as equipment which can withstand repeated use; i.e., could normally be rented and used by successive patients; is primarily and customarily used to serve a medical purpose; generally is not useful to a person in the absence of illness or injury; and, is appropriate for use in a patient's home. According to NCD 280.3 mobility assistive equipment, including manual wheelchairs to include the Tilt-in-Space type can be deemed reasonable and necessary for beneficiaries who have a personal mobility deficit sufficient to impair their participation in mobility related activities of daily living ("MRADLs") such as toileting, feeding, dressing, grooming and bathing in customary locations within the home. CMS' Pub. 100-3, Medicare National Coverage Determinations Manual (MNCDM). Ch. 1, § 280.3(B)(1).

The Medicare Claims Processing Manual, Chapter 20, Section 10.2, shows a Coverage Table for DME Claims. Reimbursement may be made for expenses incurred by a patient for the rental or purchase of durable medical equipment (DME) for use in his/her home provided that all the conditions in column A below have been met. Column B indicates the action contractors will take to establish that the conditions have been met. Specifically payment cannot be made for equipment for use in an institution classified as: A participating hospital, an emergency hospital,



meets § 1861(6)(1) of the Act, a participating SNF or meeting § 1819(0)(1) of the Act. Except for a distinct part of a SNF, if one of these institutions has a distinct part that does not meet 1861(j)(1), the patient may be considered in his/her residence if he/she was physically located in such distinct part during the use period. [Emphasis Added]

Medicare covers custom wheelchairs if other conditions exist that limit the Beneficiary's ability to participate in MRADLs at home, i.e., significant impairment of cognition or judgment and/or vision, but if the Beneficiary does suffer from any such impairment they can be ameliorated or compensated sufficiently such that the addition provision of mobility assistive equipment (hereinafter "MAE") will be reasonably expected to significantly improve the Beneficiary's ability to perform or obtain assistance to participate in MRADLs in the home. MNCDM, Ch. 1, §§ 280.3(B)(2)(a), 280.3(B)(3).

Medicare covers MAE's if the Beneficiary or their caregiver demonstrates the capability and the willingness to consistently help with the mechanical mechanisms. MNCDM, Ch. 1, § 280.3(B)(4).

Medicare covers wheelchairs if the Beneficiary's functional mobility deficit can not be sufficiently resolved by the prescription of an appropriately fitted cane or walker. MNCDM, Ch. 1, § 280.3(B)(5)(a)(b).

Medicare covers wheelchairs if the Beneficiary's typical environment supports the use of the MAE. MNCDM, Ch. 1, § 280.3(B)(6).

Medicare covers custom wheelchairs such as a Tilt-in-Space if the Beneficiary has neither sufficient upper extremity function to propel a manual wheelchair or use a power wheelchair in their home to participate in MRADLs during their typical day nor do they have a caregiver to do so for them. MNCDM, Ch. 1, § 280.3(B)(7)(a)(b)(c)(d).

Cite: Medicare National Coverage Determination Manual (MNCDM) (Internet Only) Manual Public 100-3, ch. 1, § 280.1(B)(1) (NCD 280.1) (July 2005).

Local Coverage Determination L11454 states for any item to be covered by Medicare, it must 1) be eligible for a defined Medicare benefit category, 2) be reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, and 3) meet all other applicable Medicare statutory and regulatory requirements. For the items addressed in this local coverage determination, the criteria for "reasonable and necessary", based on Social Security Act § 1862(a)(1)(A) provisions, are defined by the following indications and limitations of coverage and/or medical necessity. Specifically, A manual wheelchair with Tilt-in-Space (E1161) will be covered if the beneficiary meets the general coverage criteria for a manual wheelchair above, and if criteria (1) and (2) are met. The beneficiary must have a specialty evaluation that was performed by a licensed/certified medical professional (LCMP) such as a PT or OT, or physician who has specific training and experience in rehabilitation wheelchair evaluations and that documents the medical necessity for the wheelchair and its special features (see Documentation Requirements section). The LCMP may have no financial relationship with the supplier. The wheelchair is provided by a Rehabilitative Technology Supplier (RTS) that employs a RESNA-certified Assistive Technology Professional

(ATP) who specializes in wheelchairs and who has direct, in-person involvement in the wheelchair selection for the patient.

### Analysis

### Medical Necessity of the Tilt-in-Space Wheelchair and Accessories

This case involves Durable Medical Equipment (DME), specifically a Tilt-in-Space Wheelchair with accessories. The DME Tilt-in-Space Wheelchair was developed for those individuals requiring adjustability to redistribute their body weight for optimal positioning purposes and assist in allowing the patient to function more independently and become more involved in their lifestyle.

The primary issue on appeal is whether the Cair Medical is entitled to Medicare payment under Title XVIII of the Act for the Tilt-in-Space wheelchair and associated wheelchair accessories provided to _____ on October 5, 2011. Based on a review of the record, the undersigned ALJ finds that the Appellant is entitled to payment for the Durable Medical Equipment as prescribed by the ordering physician and dispensed by the Appellant.

The Medicare Contractor initially denied payment believing the Beneficiary was living in a Skilled Nursing Facility and finding a lack of medical necessity, therefore ineligible. QIC denied Medicare payment for the DME items finding that the medical record did not support the evaluation and there was insufficient evidence that an objective assessment of the Beneficiary's health condition was conducted. In addition to determining medical necessity, the undersigned ALJ found good cause existed to receive into evidence the documents to prove that the Beneficiary had been discharged from the skilled nursing portion of the SNF to custodial care and was living in a different section of the facility. In the present case, the undersigned ALJ has also considered the application of the above-mentioned NCD regarding the provision of the Tilt-in-Space wheelchair and accessories. The ALJ finds there is sufficient medical evidence to support Section 1862(a)(1) of the Social Security Act and 42 C.F.R. § 411.15(k)(1), further upheld by NCD 280.3.

Credible evidence and testimony revealed that the Beneficiary was nonambulatory and had impaired strength in the extremities, impaired upright dynamic balance, and cognitive decline due to age that made it difficult for her to shift her weight or get out of bed with end stage osteoporosis with degenerative joint disease. In addition to her bone and cartilage fragility the medical evidence revealed a high likelihood of falling resulting in fractures. The medical records also confirmed that the Beneficiary was 100% dependent on caregivers due to dementia. Thus, she required the Tilt-in-Space wheelchair.

Based on review of the full record, the undersigned ALJ concludes that the evidence supports a finding that the Tilt-in-Space wheelchair and accessories provided to the Beneficiary on October 5, 2011, were reasonable and necessary. A review of the submitted documentation indicates sufficient medical evidence to support payment for the DME items at issue. The evidence of record includes a face-to-face evaluation within the parameters of Medicare rules and regulations. The face-to-face examination was conducted by Mark Gerard, M.D. and he noted

that the Tilt-in-Space wheelchair with accessories was recommended for the Beneficiary because she was unable to use a cane, walker, manual wheelchair, or a power wheelchair to complete her activities of daily living due to degenerative joint disease, osteoporosis, and auto-immune complications, making her dependent on caregivers. Objective assessments by the Social Services Director and the physician documented the Beneficiary's weak extremity strength and that she would require pressure relief to redistribute her weight and for repositioning in the course of the day. The physician ordered accommodating cushions with head and leg accessories to minimize shear displacement during position changes and were a mandatory part of the Tilt-in-Space wheelchair.

Orthopedic and neurological considerations of the beneficiary, as custodial caregiver dependent patient with osteoporosis, degenerative joint disease and other comorbidities were medically addressed to include accommodating her postural asymmetries due to poor trunk control. The Tilt-in-Space wheelchair would trigger muscle reflex responses during position changes that she could not do on her own. It would minimize reflexive responses associated with the position of her head through proximal stability of the head control accessories and the Tilt-in-Space wheelchair would make it easier to position for respiratory breathing. Overall the use of the Tilt-in-Space wheelchair would allow reduced fatigue associated with hypertonicity and joint disease, would increase postural support, and the repositioning mechanism would help with muscle tone and to prevent skin breakdown. Repositioning would also help for comfort and pain management relief. Significantly, it would reduce attendant care through easier management of weight shift, sitting tolerance, and pressure relief with fewer transfers in and out of a chair or bed in the course of a day. Therefore, the evidence supports the conclusion that the Beneficiary would be bedridden without a Tilt-in-Space wheelchair because of her cognitive decline. She was 100% dependent on caregivers and could no longer safely self-propel and/or ambulate to complete her activities of daily living making other Durable Medical Equipment inadequate.

Thus, there is sufficient evidence in the administrative record to establish that the Tilt-in-Space wheelchair and accessories provided to the Beneficiary on October 5, 2011 were medically reasonable and necessary pursuant to the provisions of Section 1862(a)(1) of the Social Security Act and 42 C.F.R. § 411.15(k)(1).

### Conclusions of Law

Based on the totality of the evidence of record, the undersigned ALJ concludes that the Tilt-in-Space wheelchair and accessories provided by Cair Medical to ▓▓▓ on October 5, 2011 were medically reasonable and necessary under Section 1862(a)(1)(A) of the Social Security Act and 42 C.F.R. § 411.15(k)(1). Accordingly, Appellant is entitled to Medicare payment based on the billed amount.

Appellant: Our Medical Beneficiary:

## Order

The Medicare Contractor is **DIRECTED** to process the claim(s) in accordance with this decision.

Dated: AUG 07 2013

SO ORDERED.

Richard S. Bush
U.S. Administrative Law Judge

# EXHIBIT E

Name: ▓▓▓▓▓▓
Birth Date: 10/14/1934
Medicare/Insurance #: 557345988A

Providence St Elizabeth Care Center
10425 Magnolia Blvd
North Hollywood, CA 91601-4109

Cair Medical, Inc. provided beneficiary, ▓▓▓▓▓▓, with a manual tilt in space wheelchair on 12/19/11. Cair Medical, Inc. verified the beneficiary's eligibility both via telephone and written transmission with the facility.

Upon verification, it was validated that the beneficiary, ▓▓▓▓▓▓ was at a custodial level of care, physically residing in a distinct part of a SNF, on the date of service of 12/19/11.

Name (Print): CONSUELO TAKAHAMA   Title/Credentials: GOVERNMENT REP
Street Address: 4180 W. 190TH ST.   City: TORRANCE   State: CA   ZIP: 90504
Telephone #: (310) 303-7552
Signature: /s/ Takahama   Date: 04-15-13   Time: 2:24 PM



5-7-14

To Whom It May Concern,

███████ is a resident at Providence St. Elizabeth Care Center and was under a distinct custodial Medicare part B stay on 10-6-2011, and continues on custodial care and stay at this facility.

    Thank You,

    Susan Roy, S.S.D.