**MEADOWOOD NURSING CENTER**
**3805 DEXTER LN CLEARLAKE, CA 95422-8850**
**PHONE (707)994-7738 FAX (707)994-4378**

TO: WHOM IT MAY CONCERN:

██████████ is a resident at MEADOWOOD NURSING CENTER. Patient was under a long term care distinct custodial Medicare part B stay on 06/08/11, and continues on long term care custodial stay at this facility. Patients last day on Medicare (part A) was on 3/10/11.

Thank You

_____ (signature)
Peggy Simpson
Business Office

N Tedssh

**PROVIDENCE ST ELIZABETH CARE**
**10425 MAGNOLIA BLVD NORTH HOLLYWOOD, CA 91601-4109**
**PHONE (818)980-3872 FAX (818)763-5947**

TO: WHOM IT MAY CONCERN:

▓▓▓▓▓▓▓▓ is a resident at Providence St Elizabeth Care. Patient was under a long term care distinct custodial Medicare part B stay on 10/7/2011, and continues on long term care custodial stay at this facility.

Thank You

*Susan Roy* (signature)
SUSAN ROY
Business Office

**EXHIBIT F**



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
Midwestern Field Office
Cleveland, Ohio

| | |
|---|---|
| Appeal of: Cair Medical, Inc. | ALJ Appeal No.: 1-976457261 |
| Beneficiary: ███████ | Medicare Part B |
| HICN: ███████ | Before: LeAnn R. Canter<br>U.S. Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record, a **WHOLLY FAVORABLE** decision is entered for Appellant, Cair Medical.

### Procedural History

The Appellant submitted a claim to Medicare for the wheelchair accessories furnished to ███████ (Beneficiary) on August 23, 2011, which was initially denied. The initial denial was upheld in a redetermination decision. (Exh. 1, pages 74 – 80). The Appellant appealed the redetermination decision. (Exh. 1, page 67). On April 19, 2012, the Qualified Independent Contractor (QIC) issued an unfavorable decision involving the wheelchair accessories at issue. (Exh. 1, pages 57 – 63).

On May 2, 2012, the Office of Medicare Hearings and Appeals (OMHA) received the Appellant's timely filed request for hearing. (Exh. 1, pages 1 – 2). The jurisdictional requirements for a hearing before OMHA are met.

After a review of the record, the undersigned determined that a wholly favorable, on-the-record decision is warranted. 42 C.F.R. § 405.1038 (a).

### Issue

The issue to be determined by the Administrative Law Judge is: Whether the wheelchair accessories furnished to the Beneficiary on August 23, 2011 meet Medicare coverage requirements.

ALJ Number 1-976457261

## Findings of Fact

On August 9, 2011, a manual tilt in space wheelchair was ordered for the Beneficiary. (Exh. 1, page 94).

The Beneficiary underwent a functional mobility evaluation. (Exh. 1, pages 95 – 96). The Beneficiary resided in a nursing home with extra wide doorways and hallways and no thresholds on premises. Id. The Beneficiary's diagnoses included hemiplegia, acute but ill-defined cerebrovascular disease, and abnormality of gait. Id. The Beneficiary lacked the mental cognition to propel properly and she had general muscle weakness. Id. The Beneficiary was unable to utilize a cane, walker, manual wheelchair, or scooter. Id.

The Beneficiary required a manual tile in space wheelchair with custom seating and back supports. (Exh. 1, page 98). The Beneficiary required a contour back with a contour seat cushion. (Exh. 1, page 99).

On June 3, 2011, the Beneficiary was admitted to an acute hospital because of a cerebrovascular accident. (Exh. 1, page 103).

On August 23, 2011, the Beneficiary received the wheelchair accessories at issue. (Exh. 1, page 105). The Beneficiary received E2607 a skin pro/pos wheelchair cushion, Invacare PSI420. (Exh. 1, page 7). The Beneficiary also received an E2613 position back cushion, Invacare PBT14. Id.

## Legal Framework

1. **ALJ Review Authority**

   A. *Jurisdiction*

On May 2, 2012, OMHA received the Appellant's timely filed appeal. The remaining amount in controversy meets the jurisdictional requirements for a hearing before OMHA.

   B. *Scope of Review*

Under the implementation policy of the Centers for Medicare and Medicaid Services, United States Department of Health and Human Services, all Medicare Part A claims in which an initial determination was made after May 1, 2005, are governed by the Administrative Law Judge Hearing Procedures set forth in 42 C.F.R. §§ 405.1000-1064. The issues before the ALJ include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in the Appellant's favor.

ALJ Number 1-976457261

### C. Standard of Review

The standard of review for appeals before the ALJ is *de novo*. "The [Office of Medicare Hearings and Appeals] directs four field offices who conduct "de novo" hearings..." 70 Fed. Reg. 36386 (June 23, 2005). *See also* In the case of Atlantic Anesthesia Associates P.C., MAC (June 17, 2004)("An ALJ qualified and appointed pursuant to the Administrative Procedures Act acts as an independent finder of fact in consideration of the facts and law.").

## II. Principles of Law

### A. Social Security Act

The Medicare program, Title XVIII of the Social Security Act, is administered through the Centers for Medicare and Medicaid Services, (CMS) a component of the United States Department of Health and Human Services (HHS). Under the authority of Section 1842(a)(1)(A) of the Act, the Secretary of HHS is authorized to enter into contracts with private entities for the day-to-day operations of the program.

Part B of Title XVIII of the Social Security Act, the Supplementary Medical Insurance program, provides coverage for a variety of medical services and supplies furnished by physicians, or by others in connection with physicians' services, for outpatient hospital services, and for a number of other specific health-related items and services. Individuals participate voluntarily in the Medicare Part B program and pay a monthly premium.

Section 1862(a)(1) of the Social Security Act prohibits payment for services which "are not reasonable and necessary for the diagnosis of treatment of illness or injury or to improve the functioning of a malformed body member".

Section 1831(a) of the Act states, in pertinent part: The benefits provided to an individual by the insurance program established by this part shall consist of
(1) entitlement to have payment made to him or on his behalf (subject to the provisions of this part) for medical or other health services . . .

Section 1833(e) of the Social Security Act precludes payment to any provider of services unless "there has been furnished such information as may be necessary in order to determine the amounts due such provider" (42 U.S.C. §1395(l)). It is expected that the patient's medical records will reflect the need for the care provided. The patient's medical records include the physician's office records, hospital records, nursing home records, home health agency records, records from other healthcare professionals and test reports.

Section 1861(s) of the Act provides that the term "medical and other health services" includes durable medical equipment (DME). Durable medical equipment is equipment furnished by a supplier or a home health agency that withstands repeated use, is primarily and customarily used to serve a medical purpose, is equipment which would not be useful

ALJ Number 1-976457261

in the absence of illness or injury, and for which home use is appropriate. 42 C.F.R. § 414.202. The C.F.R. provides that Medicare will pay for rental or purchase of DME that is used in a patient's home or in an institution utilized as a home. 42 C.F.R. § 410.38.

Durable medical equipment will be considered necessary if it contributes to the "treatment of the patient's illness or injury or to the improvement of his or her malformed body member". Publication 100-2, Medicare Benefit Policy Manual, Chapter 15, § 110.1. In many cases, a physician's prescription for the equipment along with other medical information can establish the medical necessity of the equipment. *Id.*

The applicable Local Coverage Determination is Wheelchair Seating, LCD L15670, Noridian Administrative Services.

### Analysis

After a review of the record, the undersigned is persuaded that a wholly favorable decision is warranted.

The primary issue in this appeal is whether the wheelchair accessories furnished to the Beneficiary meet Medicare coverage requirements. The Beneficiary required and received a manual tilt in space wheelchair. The Beneficiary's diagnoses included hemiplegia, acute but ill-defined cerebrovascular disease, and abnormality of gait. The record reflects that the Beneficiary required custom seating and back supports and a contour back with a contour seat cushion. The record supports the medical necessity of the wheelchair accessories at issue.

Accordingly, the wheelchair accessories furnished to the Beneficiary on August 23, 2011 meet Medicare coverage requirements and are covered under Medicare.

### Conclusions of Law

The Appellant has satisfied the applicable coverage criteria for reimbursement under Part B of Title XVIII of the Act for the wheelchair accessories furnished to the Beneficiary on August 23, 2011.

### Order

The Medicare Contractor is DIRECTED to process the claim in accordance with this decision.

SO ORDERED.

Dated: 11-28-12

LeAnn R. Canter
U.S. Administrative Law Judge



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
Western Field Office
Irvine, California

| | |
|---|---|
| Appeal of: CAIR MEDICAL. | ALJ Appeal No.: 1-979623794 |
| Beneficiary: ▬▬▬▬ | Medicare Part: B |
| HICN: ▬▬▬▬ | Before: Richard Bush<br>U.S. Administrative Law Judge |

## DECISION

After careful consideration of the evidence and arguments presented in the record and at the hearing a **FULLY FAVORABLE** decision is entered for **Cair Medical**, (the "Appellant").

### Procedural History

The Appellant submitted claims to Medicare for payment of a Manual Adult Tilt-in-Space Wheelchair (E1161), a Solid Seat Support Base (E2231), a 22" wide Wheelchair Cushion (E2601), a 22" inch wide Back Cushion (E2611), A Cushioned Headrest (E0955), Adjustable Detachable Armrests (E0973), Elevating Leg Rests (E0990), an Adjustable Footplate (K0040), a Heel Loop (E0951), Leg Straps (K0039), an Anti-tipping Device (E0971), and a Safety Belt (E0978), provided to ▬▬▬▬, (the "Beneficiary"), on October 24, 2011. (Exh. 11[1]) Noridian Administrative Services, (the "Medicare Contractor"), denied payment on initial determination and redetermination. (Exh. 13)

The Appellant subsequently filed a request for reconsideration with C2C Solutions, Inc., a Qualified Independent Contractor, (the "QIC"). (Exh. 14) The QIC affirmed the Medicare Contractor's unfavorable determination and held that the Appellant was liable for the non-covered services. (Exh. 16)

The Office of Medicare Hearings and Appeals, ("OMHA"), received the Appellant's timely filed request for an Administrative Law Judge, ("ALJ") hearing. (Exh. 17) The remaining amount in controversy meets the jurisdictional requirements for a hearing before OMHA. (42 C.F.R. § 405.1006). On January 17, 2013, a Notice of Hearing was sent to the Appellant, the Beneficiary, the Medicare Contractor, and MAXIMUS Federal Services. (Exh. 18) The Medicare Contractor submitted a pre-hearing position paper. (Exh. 19) The Appellant returned the Response to Notice of Hearing and signed Waiver of Day-Day Notice. (Exh. 20) On July 3, 2013, the

---
[1] Exhibiting starts at number 21 due to limited tab stock inventory.

Appellant: Cair Medical
Beneficiary: ███
ALJ Appeal No: 1-979623794

undersigned ALJ held a telephone hearing in Irvine, California. (Exh. 21 - Recording) Mr. Todd Tucker appeared and testified on behalf of the Appellant. *Id.* All the Exhibits were admitted into evidence without objection. *Id.*

The ALJ finds that the Durable Medical Equipment (DME) provided to the Beneficiary by the Appellant is reimbursable under Medicare Part B pursuant to Title XVIII, Section 1862(a)(1), of the Act.

## Issues

The issues before the undersigned Administrative Law Judge are:

1. Whether the Appellant is entitled to payment under Title XVIII of the Social Security Act ("Act") for the Durable Medical Equipment (Tilt-in-Space manual wheelchair and accessories) provided by Cair Medical to ███ on October 24, 2011, pursuant to Section 1862(a)(1) of the Social Security Act and C.F.R. 411.15(k)(1), and in accordance with Medicare guidelines and National Coverage Determinations (NCD) 280.1 and 280.3?

2. If not, whether the Appellant should be exempt from any outstanding liability pursuant to Section 1879 and 42 C.F.R. § 411.406 of the Act, if denial of payment is based on lack of medical necessity under Section 1862(a) of the Act.

## Findings of Fact

The record establishes the following facts by a preponderance of the evidence:

1. The Appellant submitted claims to Medicare for a Tilt-in-Space wheelchair and accessories provided to the Beneficiary on October 24, 2011. (Exh. 11, 14, 17)

2. On January 19, 2012, the Medicare Contractor denied the claims on redetermination because the documentation submitted did not support the need for a Tilt-in-Space wheelchair specifically because the Beneficiary was living in a skilled nursing facility. (Exh. 13) The Beneficiary was held liable. *Id.*

3. The QIC, in its decision dated April 17, 2012, upheld the denial of payment because there was insufficient evidence that an objective assessment of Beneficiary's health was evidenced in the medical records to support the ambulatory evaluation. (Exh. 16) The QIC overruled the Medicare Contractor's denial, finding that the Medicare records showed that the Beneficiary's skilled nursing benefits were exhausted on the date of service in review. *Id.* The claim remained denied by the QIC with a conclusion that the medical documentation did not support the necessity for the Tilt-in-Space wheelchair and accessories. *Id.*

4. On October 24, 2011, the Beneficiary was a 95-year-old female who lived in the custodial care section of a skilled nursing home. (Exh. 11, 14, 17) The Beneficiary's caregivers, custodial care SNF Social Services Director, and Doctor had complaints about her mobility needs and lack thereof rendering her bedbound from dementia and a stroke. (Id.) She had dementia with poor trunk control and would be bed bound without the use of a custom wheelchair. (Id.) She had a medical history significant for a cerebrovascular accident with complications after a recent CVA. (Id.) In addition, she had congestive heart failure, atrial fibrillation, and extreme weakness in her extremities. (Id.) The Beneficiary was unable to ambulate or stand for any length of time. (Id.)

5. The September 21, 2009 to October 16, 2009, Plan of Treatment was signed by the Physical Therapist and gives an assessment rating to her capabilities being a post CVA patient. (Id.)

6. The October 22, 2009, Medicare Eligibility Detail Inquiry and Beneficiary Eligibility Information screens confirmed this date was the last billing date for her SNF skilled nursing care. (Exh. 17) She was down coded to custodial care and moved to another part of the facility. (Id.)

7. On December 3, 2010, a Joint Mobility Assessment signed by a Registered Nurse was completed documenting limited neck and upper extremity range of motion capabilities and due to the aging process she had very limited range of motion capabilities overall in her lower extremities. (Exh. 11, 14, 17)

8. On December 12, 2010, a History and Physical report was completed documenting in a face-to-face examination the Beneficiary's present illness and pertinent past history. (Exh. 11, 14, 17) Her primary diagnosis was listed as "dementia" due to a "CVA" with an emphasis that she did not have the mental capacity to understand or make decisions. (Id.)

9. On October 19, 2011, a patient chart note by Susan Ray, the Social Services Director in charge of SNF, and Dr. Tejas Patel decided that the Beneficiary required a manual Tilt-in-Space wheelchair with custom seating and back supports. (Exh. 11, 14, 17) The purpose of the Tilt-in-Space wheelchair was to decrease pressure wounds and ulcers from sitting in one position for too long. (Id.) It was estimated she would be spending up to 10 hours daily in the wheelchair and required the Tilt-in-Space type to improve respiration, digestion, and provide comfort and safety. (Id.) It was also to have elevating leg rests and adjustable height armrests for safe and easy transfers. (Id.) The ICD-9 codes were listed as 294.8, 715.90, 434.91, and 401.

10. On October 19, 2011, a Consent/Waiver Form was signed by Susan Ray, SSD, supervised under the direction of Dr. Tejas Patal, indicating the Beneficiary had been evaluated for a manual Tilt-in-Space wheelchair. (Exh. 11, 14, 17) Further documenting her 100% dependence on caregivers due to dementia and the stroke. (Id.) The Beneficiary was unable to sign the form. (Id.)

Appellant: Cair Medical
Beneficiary:
ALJ Appeal No: 1-979623794

11. On October 19, 2011, an Ambulatory Assessment Evaluation was completed and signed by Susan Ray, SSD, under the direction of Dr. Tejas Patel. (Exh. 11, 14, 17) The Beneficiary's diagnosis codes were listed as 294.8, 416.90, 434.91, and 401.9. (Id.) It confirmed with checkmarks that the Beneficiary was not ambulatory and could not self propel with her arms or legs. (Id.) A specific SOAP note stated the Beneficiary was "totally dependent." (Id.)

12. On October 19, 2011, a Functional Mobility Evaluation was completed and signed by Susan Ray, SSD, under the direction of Dr. Tejas Patel. (Exh. 11, 14, 17) The same diagnosis codes that were on the Assessment Evaluation were documented on the Mobility Evaluation. (Id.) One SOAP note stated, "PT suffers from general muscle weakness and poor trunk control." (Id.) In regards to using a cane or walker it was noted that "PT is not using any DME" with the reiteration of the note that "PT is total dependent," therefore, she could not use a cane or walker. (Id.) She was noted to be "entirely limited" and did not have cognitive capabilities in performing Mobility Related Activities of Daily Living (MRADL's). (Id.) It was documented that the Beneficiary could not use a cane or a walker and required full assistance performing MRADL's because she "suffers from dementia." (Id.) In addition a manual wheelchair, standard power wheelchair, nor scooter, would be beneficial because she lacked extremity strength and trunk stability. (Id.) The notes revealed that her skin integrity would be extensively compromised without a Tilt-in-Space wheelchair to reposition her body compromised by the stroke and dementia leaving her totally dependent on caregivers to move her extremities. (Id.)

13. On October 19, 2011, the Appellant received the Measurements report generated and signed by Susan Ray, SSD. (Exh. 11, 14, 17) A specific SOAP note comment consistent with the prescription and evaluations reiterated the medical necessity stating, "PT is total assist" and required the custom accessories. (Id.)

14. On June 30, 2011, July 31, 2011, and September 9, 2011, the Beneficiary was seen by Dr. Tejas Patel. (Exh. 11, 14, 17)

15. On October 20, 2011 a prescription for a manual Tilt-in-Space wheelchair was written with the objective assessment of a pressure realigning requirement. (Exh. 11, 14, 17) The RX is signed by Dr. Tejas Patel, M.D. (Id.)

16. The October 22, 2011, an Occupational Therapy Initial Evaluation & Discharge Summary was signed by Dr. Tejas Patel. (Exh. 11, 14, 17) It documented her physical limitations due to the recent CVA. (Id.)

17. The October 24, 2011, Delivery Ticket/Work Order lists all line items at issue that were delivered and received by the Beneficiary. (Exh. 11, 14, 17) The Delivery Ticket was signed by Susan Ray, SSD, confirming receipt and agreement to the terms and conditions. (Id.)

18. The October 24, 2011, Patient Equipment Education and Home Safety Checklist indicated that the Tilt-in-Space wheelchair was delivered to the Beneficiary. (Exh. 11,

14, 17). The equipment information, procedures, and environmental requirements were checked. (*Id.*) Safety usage instructions were also reviewed. (*Id.*)

19. On October 24, 2011, the Purchased Items Notification form and the Equipment Warranty Information Form for the Tilt-in-Space wheelchair were both signed for by a Registered Nurse at her facility. (Exh. 11, 14, 17)

20. On October 24, 2011, a Detailed Product Description form was signed by Dr. Tejas Patel, M.D. (Exh. 17) It identified that a "Manual Tilt-in-Space Wheelchair – Invacare Solara 36" with accessories was ordered and shipped to the Beneficiary. (*Id.*) The ICD-9 codes used for the order included 294.8, 715.90, 434.91, and 401.9. (*Id.*)

21. The April 30, 2011, the Tilt-in-Space Post-Intake Medical Evaluation form was signed by Susan Ray SSD and Dr. Tejas Patel, M.D. and indicated that the Beneficiary used the wheelchair 5-7 days a week for 5 or more hours a day and it was continuing to meet her medical needs. (Exh. 17)

22. On May 8, 2012, the Level of Care Verification form was signed by Consuelo Takahama authenticating that the Beneficiary was indeed a resident at a custodial/non-skilled level of care and was not being billed to Medicare part A. (Exh. 17) It was submitted to clarify the Skilled Nursing Home residency appeal at issue. (*Id.*) A last Medicare Part A claim was submitted with an occurrence code number 22, indicating a drop to a lower level of care. (*Id.*) The last date the Beneficiary was billed as a residence under Medicare Part A was for the dates of service from October 1, 2009 to October 22, 2009. (*Id.*) The Beneficiary was changed to custodial care long before the delivery of the Tilt-in-Space Wheelchair on October 24, 2011. (*Id.*)

23. On July 3, 2013, the Appellant testified that the Tilt-in-Space Wheelchair and accessories were delivered to the Beneficiary on October 24, 2011. (Exh. 21) He further confirmed that many of his clients live in Skilled Nursing Facilities, but live in the custodial care section of the facility. This beneficiary was eligible to receive the wheelchair. He also stated his only product is the Tilt-in-Space wheelchair and 90% of his clients are Medicare patients. His rational for medical necessity was that the post CVA Beneficiary would be bed ridden all day and night without a Tilt-in-Space wheelchair. Due to her complete dependence on caregivers she required the Tilt-in-Space wheelchair with clinical and functional applications to change positions every few hours for proper body alignment and for pressure relief. The Tilt-in-Space wheelchair would provide this Beneficiary with the necessary change in position capability because she could not independently shift her body weight or change position. The accessories were also medically necessary and a mandatory part of the wheelchair that the physician prescribed and the Social Services Director also found necessary. She spent up to 10 hours a day in the Tilt-in-Space wheelchair meeting the requirement for payment. The Beneficiary would be at a higher risk for skin breakdown and her sitting tolerance would be compromised in any other wheelchair making the Tilt-in-Space wheelchair and accessories medically reasonable and necessary. (*Id.*)