STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture
FRANK D. KORTUM
Assistant United States Attorney
Asset Forfeiture Section
California Bar No. 110984
     United States Courthouse
     312 North Spring Street, 14th Floor
     Los Angeles, California 90012
     Telephone:  (213) 894-5710
     Facsimile:  (213) 894-7177
     E-Mail:  Frank.Kortum@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

               FOR THE CENTRAL DISTRICT OF CALIFORNIA

                         SOUTHERN DIVISION

| | |
|---|---|
| TODD TUCKER,<br><br>             Plaintiff,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>             Defendant. | Case No.: SACV 14-1795 DOC (DFMx)<br><br>OPPOSITION TO MOTION FOR RETURN OF PROPERTY; DECLARATION OF FRANK D. KORTUM<br><br>DATE:  December 16, 2014<br>TIME:  10:00 a.m.<br>CTRM:  6A |

# TABLE OF CONTENTS

PAGES

TABLE OF AUTHORITIES...........................................  ii

I.    INTRODUCTION..............................................  2

II.   STATEMENT OF FACTS........................................  2

III.  THIS COURT SHOULD VACATE THE HEARING DATE CURRENTLY SET FOR THE
      MOTION FOR RETURN OF PROPERTY............................  4
      A.   CAIR Has Not Properly Served the Motion.............  4

      B.   The Initiation of Administrative Forfeiture Proceedings
           Moots CAIR's Motion for Return of Property...........  6

      C.   CAIR's Motion is Substantively Defective ...........  7

           1.   The Government's Actions in Seizing the Assets Were
                Justified.......................................  7

           2.   CAIR Has Failed to Introduce Evidence of Harm if the
                Assets are not Returned......................... 13

           3.   CAIR's Challenge to the Constitutionality of the Civil
                Forfeiture Statute is Without Merit............. 14

      D.   An Evidentiary Hearing is not Justified Here.........15

IV. Conclusion................................................. 16

1

# TABLE OF AUTHORITIES

2

PAGES

3

**FEDERAL CASES**

4

Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) ............. 15

5

Chapple v. Internal Revenue Service, *1996 WL 249351* .............. 5

6

Cromwell v. United States, 2013 WL 323261
    (N.D. Cal. Jan. 28, 2013) .................................. 4,6

7

Herb Reed Enterprises, LLC v. Florida Entertainment
    Management, Inc., 736 F.3d 1239 (9th Cir. 2013) ............. 14

8

In Re Seizure of $958,921 Worth of LED Televisions,
    2013 WL 3490743 (C.D. Cal. May 30, 2013) .................. 4,6

9

Light v. Wolf, 816 F.2d 746 (D.C. Cir. 1987) ...................... 5

10

May Department Stores Co. v. N.L.R.B., 707 F.2d 430
    (9th Cir. 1983) ........................................... 14

11

Occupy Tucson v. City of Tucson, 2011 WL 5401840
    (D. Ariz. Nov. 8, 2011) ................................... 5

12

13

Plotzker v. Lamberth, 2008 WL 4706255 (W.D. Va. Oct. 22, 2008) .... 5

14

Sampson v. Murray, 415 U.S. 61 (1974) ........................... 14

15

United States v. $8,850 in United States Currency,
    461 U.S. 555 (1983) ....................................... 14

16

17

United  States v. Diaz-Flores, 2012 WL 1292460
    (D. Nev. April 13, 2012) .................................. 7

18

United States v. Elias, 921 F.2d 870 (9th Cir. 1990) ............. 7

19

United States v. Ibrahim, 522 F.3d 1003 (9th Cir. 2008) .......... 4

20

United States v. Martinson, 809 F.2d 1364 (9th Cir. 1987) ........ 5

21

United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003) ........... 4

22

23

**FEDERAL STATUTES**

24

18 U.S.C. § 983(a)(2)(B) ........................................ 15

25

18 U.S.C. § 983(a)(3)(A) ........................................ 15

26

18 U.S.C. § 981(b)(3) ........................................... 1

27

18 U.S.C. § 983(f) ............................................ 3,7

28

18 U.S.C. § 983(f)(1) .......................................... 3,7

18 U.S.C. § 983(f)(1)(B) ....................................... 3,7

18 U.S.C. § 983(f)(2) .......................................... 3,7

42 U.S.C. § 1395x(n) ........................................... 8,9

**FEDERAL REGULATIONS**

42 C.F.R. § 414.202   ........................................... 8

42 C.F.R. § 410.38 ............................................. 8,9

42 C.F.R. § 483.5(b) ....................................... 10,11,12

42 C.F.R. § 483.5(b)(2)(i) ...................................... 11

42 C.F.R. § 483.5(b)(2)(ii) ..................................... 11

42 C.F.R. § 483.5(b)(2)(iii) .................................... 11

42 C.F.R. § 483.5(b)(2)(iv) ..................................... 12

42 C.F.R. § 483.5(b)(2)(i)(A) ................................... 11

42 C.F.R. § 483.5(b)(2)(i)(C) ................................... 11

42 C.F.R. § 483.5(b)(2)(i)(D) ................................... 11

42 C.F.R. § 483.5(b)(2)(vi) ..................................... 12

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 4(i) ..................................................... 4,5,7

Rule 4(i)(1) .................................................... 5,6

Rule 12(a)(2) ..................................................... 6

Rule 41(g) ...................................................... 5,7

**FEDERAL MANUALS**

Medicare Benefit Policy Manual, Rev. 194, 09-03-14 .............. 9

Medicare Claims Processing Manual, Rev. 3086, 10-03-14 ....... 8,9,13

MLN Matters, SE1409 Revised ............................. 8,9,11,12

State Operations Manual, Rev. 107, 04-04-14 .................... 12

LOCAL RULES OF PRACTICE FOR THE CENTRAL DISTRICT OF CALIFORNIA

Rule 6-1 ......................................................... 14

Rule 7-5 ......................................................... 14

I.    INTRODUCTION

Defendant United States of America (the "government") opposes the motion for return of property filed by CAIR Medical, Inc.[1] on the ground that CAIR has not properly served the motion. Without waiving that ground for opposition, the government respectfully suggests that additional grounds exist for denying the motion.   Specifically,

   A. The government has initiated administrative forfeiture
      proceedings against the assets that are the subject of
      the complaint, thus providing CAIR with an adequate
      remedy at law; and

   B. The motion is substantively defective.

Finally, because the grounds that CAIR has advanced in support of its motion are manifestly without merit, the government respectfully suggests that this Court deny CAIR's request for an evidentiary hearing.

II.    STATEMENT OF FACTS

On October 17, 2014, the government served CAIR with seizure warrants for bank accounts and vehicles.  Motion at p. 4.  The assets were seized in connection with a criminal investigation into a Medicare fraud scheme involving CAIR's sales of wheelchairs to Medicare beneficiaries residing in Skilled Nursing Facilities.

On November 10, 2014, CAIR filed a motion for return of property, seeking the return of the seized assets.  The motion

---

[1] For simplicity, references to CAIR Medical also include Todd Tucker, Dawn Tucker, Rehab Fitness, Inc. and A-to-Z Solutions (identified as the movants herein).

1  is purportedly based on 18 U.S.C. § 981(b)(3).[2]  Counsel for CAIR
2  subsequently stated that the motion "is not a Federal Rule of
3  Criminal Procedure 41[g] motion."  Declaration of Frank D.
4  Kortum ¶ 2 & Exh. "A".  Instead, counsel for CAIR asserted that
5  "the situation at hand is more analogous to what is set out in
6  18 U.S.C. § 983(f) regarding release of seized property."  Id.[3]
7    Neither the United States Attorney for the Central District of
8  California nor the Attorney General of the United States has
9  been served with the motion.  Instead, the proof of service
10  attached to the motion (which is the initiating document in this
11  case) reflects that CAIR served three individual Assistant
12  United States Attorneys by first class mail.  There is no
13  evidence that CAIR served the United States Attorney by
14  delivering the motion or by sending it by registered mail to the
15  civil-process section of the United States Attorney's Office,
16  and no evidence that he made any attempt to serve the Attorney
17  General of the United States.  When the government notified
18  counsel for CAIR that service was defective, counsel for CAIR
19
20  [2]  18 U.S.C. § 981(b)(3) addresses only the issue of where a
21  motion for return of property is properly filed, and thus does
    not provide a basis for an exercise of this Court's
22  jurisdiction.

23  [3]   In fact, the motion does not cite Section 983(f) and there is
24  no evidence that CAIR has attempted to comply with the
    provisions that govern relief under that section.  For example,
25  CAIR did not, prior to filing the motion, "request possession of
    the property from the appropriate official" as required by 18
26  U.S.C. § 983(f)(2).  Nor has CAIR shown that it or any of the
    other movants have "sufficient ties to the community to provide
27  assurance that the property will be available at the time of
28  trial" as required by Section 983(f)(1)(B).

1   suggested that "any deficiency in notice . . . can be cured . .
2   ." (id.), but as of November 19, 2014 counsel for CAIR had
3   provided no evidence that the deficiencies in service had in
4   fact been cured. Id.
5       On November 19, 2014, the government initiated timely
6   administrative forfeiture proceedings against the assets that
7   are the subject of this motion. Kortum Decl. ¶ 3 & Exh. "B".[4]
8   On November 21, 2014, CAIR filed a "Supplemental Brief" in
9   support of its motion. Dkt. 5.
10      III. THIS COURT SHOULD VACATE THE HEARING DATE CURRENTLY SET
11           FOR THE MOTION FOR RETURN OF PROPERTY
12           A. CAIR Has Not Properly Served the Motion
13      In the absence of a pending criminal proceeding at the time of
14   filing, the Court is required to treat a motion for return of
15   property as a civil complaint. United States v. Ritchie, 342
16   F.3d 903, 906-07 (9th Cir. 2003) (citing United States v.
17   Martinson, 809 F.2d 1364, 1367 (9th Cir. 1987)). As a civil
18   complaint, the motion is subject to the requirements of Rule
19   4(i) of the Federal Rules of Civil Procedure. Cromwell v.
20   United States, 2013 WL 323261 at *2 (N.D. Cal. Jan. 28,
21   2013)(citing Ibrahim); accord In Re Seizure of $958,921 Worth of
22   LED Televisions, 2013 WL 3490743 at *1 (C.D. Cal. May 30, 2013);
23   see generally United States v. Ibrahim, 522 F.3d 1003, 1008 (9th
24   Cir. 2008) (Federal Rules of Civil Procedure "apply to each
25   stage of the proceedings.") Specifically, Rule 4(i) requires
26   ─────────────────────
27   [4] Exhibit "B" consists of a letter that the F.B.I. (the seizing
     agency) sent to counsel for CAIR. Similar letters were sent to
28   Todd Tucker and Dawn Tucker.

that the party either (A) deliver the complaint personally to the United States Attorney (or his designate) for the district where the action is brought, or send the complaint by certified mail to the civil-process clerk at the United States Attorney's office; and (B) send a copy of the complaint by registered or certified mail to the Attorney General of the United States. Fed.R.Civ.P. 4(i)(1).[5]

CAIR has failed to comply with the service requirements of Rule 4(i) here.  The proof of service attached to the motion (the initiating document in this case), reflects that CAIR sent a copy of the complaint by regular mail to three Assistant United States Attorneys.  CAIR did not deliver the complaint personally to the United States Attorney (or his designate), and did not serve the Attorney General of the United States at all. CAIR's service of the motion is therefore defective.

As shown above, counsel for CAIR was notified that service of the motion was defective but has thus far failed to cure it. Kortum Decl. ¶ 2 & Exh. "A".  Under these circumstances, CAIR's failure to comply with the provisions of Rule 4(i) is ample reason in and of itself for this Court to deny CAIR's motion. See generally Chapple v. Internal Revenue Service, 1996 WL 249351 at *1 (denying motion to quash subpoena where government not properly served); Occupy Tucson v. City of Tucson, 2011 WL

---

[5] The requirements of Rule 4(i) are "more than a formality" (Plotzker v. Lamberth, 2008 WL 4706255 at *12 (W.D. Va. Oct. 22, 2008)) because they allow "the appropriate [Department of Justice] official[s]" to make decisions regarding how to respond to the complaint "in the early stages of litigation when often crucial tactical decisions need to be made."  Light v. Wolf, 816 F.2d 746, 750 (D.C. Cir. 1987).

5401840 at *2 (D. Ariz. Nov. 8, 2011)(denying injunctive relief where defendants not properly served).   Alternatively, this Court should remove the motion from its calendar and order CAIR to "effect service in accordance with the Federal Rules of Civil Procedure . . ." (Cromwell, supra, 2013 WL 323261 at *2); and to provide proof of effective service of process on the government in accordance with Rule 4(i)(1).   See LED Televisions, supra, 2013 WL 3490743 at *2.   If the Court orders CAIR to properly serve the motion for return of property, it should also order that the government's response to the complaint is not due until 60 days after completion of proper service.   Fed.R.Civ.P. 12(a)(2); see generally Cromwell, supra, 2013 WL 323261 at *2 (requiring compliance with Rule 12(a)(2)).   If the Court adopts this course of action, there will be no need for consideration of (as discussed below) (1) the fact that CAIR has an adequate remedy at law (based on the government initiation of administrative forfeiture proceedings); or (2) the insufficiency of CAIR's motion itself (based on its incorrect interpretation of the applicable statutes and regulations and its failure to submit any evidence in support of its claim of hardship).   Without waiving the above objection to CAIR's defective service, the government presents the following additional grounds for denying CAIR's motion.

> B.   The Initiation of Administrative Forfeiture
>     Proceedings Moots CAIR's Motion for Return of
>     Property.

On November 19, 2014, the government initiated administrative forfeiture proceedings against the assets that are the subject

6

of CAIR's motion for return.  Kortum Decl. ¶ 3 & Exh. "B".
These proceedings provide CAIR with an adequate remedy at law
and require dismissal of CAIR's motion.  See <u>United States v.</u>
<u>Elias</u>, 921 F.2d 870, 873 (9th Cir. 1990).  An adequate remedy at
law exists even though the administrative forfeiture proceedings
were not pending at the time CAIR filed its motion.  See <u>United</u>
<u>States v. Diaz-Flores</u>, 2012 WL 1292460 at *1 (D. Nev. April 13,
2012).  This Court should therefore deny CAIR's motion.[6]

       C. <u>CAIR's Motion is Substantively Defective</u>.

          1. <u>The Government's Actions in Seizing the Assets Were</u>
            <u>Justified</u>.

CAIR asserts that the government's actions in seizing the
assets were "baseless" (Motion at p. 7:23).  This assertion is

---

[6]  <u>Elias</u> was decided under Rule 41(e) of the Federal Rules of
Criminal Procedure (921 F.2d at 870), while <u>Diaz-Flores</u> was
decided under Rule 41(g).  2012 WL 1292460 at *1.  The two
subsections are substantively identical.  <u>Id.</u> at *1 n.1.  CAIR
asserts that its motion is not based on Rule 41(g) and is
instead "analogous" to a motion for release of property under 18
U.S.C. § 983(f).  Kortum Decl. ¶ 2 & Exh. "A".  This assertion
is without merit for at least two reasons.  First,
notwithstanding CAIR's failure to designate its motion as a Rule
41(g) motion, the motion seeks equitable relief and is therefore
subject to the rule that such motions must be served as
complaints in compliance with Rule 4(i) of the Federal Rules of
Civil Procedure.  Second, CAIR's assertion that its motion is
analogous to a motion made under 18 U.S.C. §983(f) ignores the
fact that CAIR has not satisfied the requirements that must be
met before a motion under that section is filed.  For example,
CAIR has made no showing that either it or its owner has
"sufficient ties to the community to provide assurance that the
property will be available at the time of trial" (<u>id.</u> §
983(f)(1)(B)), or that it has "requeste[ed] possession of the
property from the appropriate [F.B.I.] official" as required by
Section 983(f)(2).

1  based on an argument that wheelchairs may be sold to Medicare
2  Part B beneficiaries who are in a "distinct part" of the SNF and
3  are receiving only custodial care.  Motion at p. 6:16-20.  As
4  explained below, CAIR's argument is without merit.
5          Wheelchairs are classified as Durable Medical Equipment
6  ("DME"), which in turn is defined as equipment that is
7  "appropriate for use in the home."  42 U.S.C. § 1395x(n); 42
8  C.F.R. § 414.202.  It is a long-standing principle that Medicare
9  Part B pays for the rental or purchase of DME only if the
10 equipment is used in the patient's home or in an institution
11 that the patient uses as a home.  42 U.S.C. § 1395x(n); 42
12 C.F.R. § 410.38(a); see also Medicare Claims Processing Manual,
13 Chap. 6, § 10 ("The definition of DME in §1861(n) of the Social
14 Security Act (the Act) provides that DME is covered by Part B
15 only when intended for use in the home . . . .");[7] MLN Matters p.
16 2 ("Section 1861(n) of the Act limits Part B coverage under the
17 DME benefit to those items that are furnished for use in a
18 patient's home.")(copy attached as Exh. "C").[8]  A "home" can
19 include the beneficiary's dwelling such as an apartment, a
20 relative's home, a home for the aged, or some other institution
21 that is neither a hospital nor primarily engaged in providing
22
23
───────────────
24 [7]  Chapter 6 of the Medicare Claims Processing Manual is
25 available at http://www.cms.gov/Regulations-and-
   Guidance/Guidance/Manuals/downloads/clm104c06.pdf.
26
27 [8]  MLN Matters is also available at http://www.cms.gov/Outreach-
   and-Education/Medicare-Learning-Network-
28 MLN/MLNMattersArticles/downloads/SE0745.pdf

                                    8

skilled care to its residents.  <u>Medicare Benefit Policy Manual</u>, Chap. 15, § 110.1(D).[9]

Most importantly for the present case, Congress has expressly excluded SNFs from the definition of a "home" for Part B billing for DME.  See 42 U.S.C. § 1395x(n) (a "home" cannot be "an institution that meets the requirements of . . . section 1395i-3(a)(1) of this title" (i.e., a SNF)); 42 C.F.R. § 410.38(b)  ("An institution that is used as a home may not be a . . . SNF as defined in sections 1861(e)(1), 1861(mm)(1) and 1819(a)(1) of the Act."); <u>Medicare Claims Processing Manual</u>, Chap. 6, § 10 ("DME is covered by Part B only when intended for use in the home, which explicitly does not include a SNF."); <u>Medicare Benefit Policy Manual</u>, Chap. 15, § 110.1(D) ("[A]n institution may not be considered a beneficiary's home if it . . . [m]eets at least the basic requirement in the definition of a skilled nursing facility . . ."); <u>Medicare Claims Processing Manual</u>, Chapter 20, § 211.1 ("Part B's DME benefit does not cover DME items that are furnished for use in SNFs.");[10] MLN Matters at p. 2 ("[A]ny institution meeting the basic definition . . . of an SNF in Section 1819(a)(1) of the Act, cannot be considered a patient's 'home' for this purpose." (i.e., Part B billing for DME)).

---

[9]  Chapter 15 of the Medicare Benefit Policy Manual is available at <u>http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/bp102c15.pdf</u>.

[10]  Chapter 20 of the Medicare Claims Processing Manual is attached to CAIR's motion as Exhibit "B" and is also available at <u>http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c20.pdf</u>.

1        So because Medicare Part B will only pay for DME in a

2    beneficiary's "home," and because a SNF is never a beneficiary's

3    "home," Medicare Part B will never pay for DME for a beneficiary

4    in a SNF under any circumstances.

5        The argument that Medicare will cover the cost of

6    wheelchairs for a "distinct part" of a SNF is incorrect. CMS

7    defines a "distinct part SNF" in light of "the larger

8    institution . . . that houses it," and there is no regulation

9    suggesting that a Medicare-certified SNF could then have

10   distinct parts within it that do not provide skilled care.  The

11   CMS regulation defining a "distinct part" states:

12       A distinct part SNF or NF is physically distinguishable

13       from the larger institution or institutional complex that

14       houses it, meets the requirements of this paragraph and of

15       paragraph (b)(2) of this section, and meets the applicable

16       statutory requirements for SNFs or NFs in sections 1819 or

17       1919 of the Act, respectively. A distinct part SNF or NF

18       may be comprised of one or more buildings or designated

19       parts of buildings (that is, wings, wards, or floors) that

20       are: In the same physical area immediately adjacent to the

21       institution's main buildings; other areas and structures

22       that are not strictly contiguous to the main buildings but

23       are located within close proximity of the main buildings;

24       and any other areas that CMS determines on an individual

25       basis, to be part of the institution's campus.

26   42 C.F.R. § 483.5(b).  The definition explains that: "A distinct

27   part must include all of the beds within the designated area,

28   and cannot consist of a random collection of individual rooms or

10

beds that are scattered throughout the physical plant." Id.
Therefore, "[T]he determination of whether an institution meets
the basic SNF definition is made by evaluating it as a single
unit rather than by separately evaluating and classifying
individual areas within the institution." See MLN Matters at p.
4)(emphasis in original).

In addition to this primary definition, there is additional
proof in the regulations confirming that CMS intended a
"distinct part" to refer to an entire SNF in a larger campus,
institution, or complex, rather than alleged distinct parts
within a Medicare-certified SNF. See, e.g., 42 C.F.R.

§ 483.5(b)(2)(i)("The SNF . . . must be operated under
common ownership and control (that is, common governance) by the
institution of which it is a distinct part. . .); id.
§ 483.5(b)(2)(i)(A)(common governance may be shown if "[t]he SNF
or NF is wholly owned by the institution of which it is a
distinct part."); id. § 483.5(b)(2)(i)(C)("The institution of
which the SNF or NF is a distinct part has final responsibility
for the distinct part's administrative decisions and personnel
policies…."); id. § 483.5(b)(2)(i)(D)("The SNF or NF functions
as an integral and subordinate part of the institution of which
it is a distinct part, with significant common resource usage of
buildings, equipment, personnel, and services."); id.
§ 483.5(b)(2)(ii)("The administrator of the SNF or NF reports to
and is directly accountable to the management of the institution
of which the SNF or NF is a distinct part."); id.
§ 483.5(b)(2)(iii)("The SNF or NF must have a designated medical
director who is responsible for implementing care policies and

11

1    coordinating medical care, and who is directly accountable to
2    the management of <u>the institution of which it is a distinct</u>
3    <u>part</u>."); <u>id.</u> § 483.5(b)(2)(iv)   ("The SNF or NF is financially
4    integrated with <u>the institution of which it is a distinct part</u>,
5    as evidenced by the <u>sharing of income and expenses with that</u>
6    <u>institution</u>, and the <u>reporting of its costs on that</u>
7    <u>institution's cost report</u>.")(emphasis added in all).

8         Indeed, the regulations contemplate CMS approval of a
9    distinct-part SNF that is part of a larger institution.   <u>Id.</u>
10   § 483.5(b)(2)(vi); <u>see also</u> State Operations Manual, Chap. 2,
11   § 2762B(4)   ("The term 'distinct part' refers to a portion of an
12   institution of institutional complex (e.g., a nursing home or a
13   hospital) that is certified to provide SNF and/or NF
14   services.").[11]   There is nothing in the regulations to suggest
15   any support for CAIR's proposition--namely, that a Medicare-
16   certified SNF may have a distinct part within it that does not
17   provide skilled nursing care and, therefore, may constitute a
18   "home" for Part B billing.   <u>See</u> MLN Matters at p. 4 ("Part B
19   payment would not be available for DME furnished in any part of
20   the institution that is identified as meeting the basic SNF
21   definition, regardless of the type of care a particular resident
22   may be receiving there.").

23        The portion of the Inspector General's report that CAIR
24   quotes at page 5 of its brief runs together two separate
25   discussions and is taken completely out of context.   The first
26   _____
27   [11]   Chapter 2 of the State Operations Manual is available at
     <u>http://www.cms.gov/Regulations-and-</u>
28   <u>Guidance/Guidance/Manuals/downloads/som107c02.pdf</u>.

part of the quotation, found at page i of the report, is
discussing <u>Medicaid-only</u> nursing facilities, not the Medicare
certified skilled nursing homes at issue in this case.  The
second part of the quotation is from a section, found at page 7
of the report, that also deals with nursing homes certified by
some states as having a "distinct part" for <u>Medicaid</u> purposes.

Finally, the language that CAIR's brief cites from the
Medicare Claims Processing Manual (Chapter 20 § 10.2 at 11-12)
actually provides the precise opposite of what CAIR contends.
That section provides that a patient may be considered to be in
his or her home "<u>except for a distinct part of a SNF.</u>"  That is
because Medicare Part B never covers the provision of durable
medical equipment, including wheelchairs, for any resident of a
skilled nursing facility, regardless of the type of care the
resident is receiving.  It is the responsibility of the skilled
nursing facility to provide what durable medical equipment is
needed.

Because CAIR has failed to demonstrate that it is likely to
prevail on the merits in this action, this Court should deny its
motion for return of property.

> 2. <u>CAIR Has Failed to Introduce Evidence of Harm if the</u>
> <u>Assets are not Returned</u>.

CAIR asserts that the government's asset seizures have left
it without "cash flow" and put it "on the verge of disaster"
(Motion at p. 7:24-25), that "the Tuckers are barely able to
meet the basic necessities of life" (<u>id.</u> at 7:28), and that they
cannot purchase medication for Ms. Tucker's cancer treatment.
<u>Id.</u> at p. 8:1-2.  Neither CAIR nor the Tuckers have supported

13

these allegations with any evidence.  (Mr. and Ms. Tucker both submitted declarations in support of the motion, but neither declaration refers to cash flow problems, inability to meet basic expenses, or any of the other allegations of harm set forth in the motion.)  The failure of CAIR and the Tuckers to provide any evidentiary support for their allegations of irreparable harm requires denial of their motion.  See Sampson v. Murray, 415 U.S. 61, 88 (1974); accord Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc., 736 F.3d 1239, 1250 (9th Cir. 2013).

### 3. CAIR's Challenge to the Constitutionality of the Civil Forfeiture Statute is Without Merit.

In its untimely filed "Supplemental Brief"[12] CAIR asserts that the civil forfeiture statute is "unconstitutional."  Supp. Brief (Dkt. 5) at p. 2:6-7.  CAIR's assertion is without merit. "[D]ue process does not require [the government] to conduct a hearing before seizing items subject to forfeiture."  United States v. $8,850 in United States Currency, 461 U.S. 555 562 n.12 (1983).  In addition, a delay of 18 months between seizure and the initiation of a judicial forfeiture proceeding is constitutionally reasonable.  Id. at 569.

Here, as discussed above, the government has initiated a timely administrative forfeiture proceeding as required by the

---

[12] CAIR filed its Supplemental Brief in violation of this Court's Local Rules, which require that all arguments in support of a motion be filed 28 days before the hearing.  C.D.Cal.R. 6-1 & 7-5.  In the interest of expediting the resolution of this motion the government is responding to CAIR's Supplemental Brief on the merits.

1  forfeiture statute.  Kortum Decl. ¶ 3 & Exh. "B".  The

2  administrative forfeiture process will conclude well within the

3  18-month period that the $8,850 Court held was constitutional.[13]

4       CAIR also asserts that the civil forfeiture statute

5  violates its right to equal protection.  Supp. Brief at p. 3:17.

6  This assertion is frivolous because CAIR is not a member of a

7  protected class.  See generally Barren v. Harrington, 152 F.3d

8  1193, 1194-95 (9th Cir. 1998).  This Court should therefore

9  reject CAIR's challenge to the constitutionality of the civil

10  forfeiture statute.[14]

11       D. An Evidentiary Hearing is not Justified Here.

12       CAIR has requested an evidentiary hearing on the issues

13  raised by this motion.  Motion at p. 3:25-26.  Based on the

14  arguments set forth above, it is clear that CAIR's motion is

15  manifestly without merit, and that no evidentiary hearing is

16  justified here.  See generally Perez v. Rosario, 459 F.3d 943,

17  950 (9th Cir. 2006)(no evidentiary hearing required where

18  evidence in support of motion was "flimsy'); accord May

19  Department Stores Co. v. N.L.R.B., 707 F.2d 430, 432 (9th Cir.

20  1983).

21

22  _____

23  [13]  Under the civil forfeiture statute, CAIR has 35 days from
    November 19 in which to "file a claim with the appropriate
24  official."  18 U.S.C. § 983(a)(2)(B).  Thereafter the government
    has 90 days within which to file a civil forfeiture complaint.
25  Id. § 983(a)(3)(A).

26  [14]  CAIR's attempt to established that it has been "prejudiced"
    within the meaning of the due process clause (Supp. Brief at p.
27  5:10) fails because it has submitted no evidence to support its
28  claims of prejudice.

15

IV.   CONCLUSION

For the foregoing reasons the government respectfully requests that this Court (A) vacate the December 16 hearing date; (B) order CAIR to properly serve its motion for return of property in accordance with the Federal Rules of Civil Procedure; and (C) order that the government may have 60 days within which to respond to the motion.  Alternatively, the government respectfully requests that this Court deny CAIR's motion for return of property.

DATED: November 20, 2014     STEPHANIE YONEKURA
                             Acting United States Attorney
                             ROBERT E. DUGDALE
                             Assistant United States Attorney
                             Chief, Criminal Division
                             STEVEN R. WELK
                             Assistant United States Attorney
                             Chief, Asset Forfeiture Section


                             FRANK D. KORTUM
                             Assistant United States Attorney
                             Asset Forfeiture Section

                             Attorneys for Plaintiff
                             United States of America

16