1

2                          UNITED STATES DISTRICT COURT

3                        CENTRAL DISTRICT OF CALIFORNIA
                                SOUTHERN DIVISION
4

5
     TODD TUCKER, ET AL.,          )
6                                  )
                                   )
7          PLAINTIFFS,             )
                                   )
8          VS.                     )  CASE SA CV 14-01795-DOC(DFM)
                                   )
9                                  )
     UNITED STATES OF AMERICA,     )
10                                 )  LOS ANGELES, CALIFORNIA
                                   )
11         DEFENDANT.              )  DECEMBER 12, 2014
                                   )  (9:59 A.M. TO 10:49 A.M.)
12   _____)

13

14                                 HEARING

15           BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
                   UNITED STATES MAGISTRATE JUDGE
16

17

18   APPEARANCES:            SEE NEXT PAGE

19   COURT REPORTER:         RECORDED; COURT SMART

20   COURTROOM DEPUTY:       TERRI STEELE

21   TRANSCRIBER:            DOROTHY BABYKIN
                             COURTHOUSE SERVICES
22                           1218 VALEBROOK PLACE
                             GLENDORA, CALIFORNIA  91740
23                           (626) 963-0566

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:        KHOURI LAW FIRM
 2                             BY:  MICHAEL JOHN KHOURI
                                    ATTORNEY AT LAW
 3                             4040 BARRANCA PARKWAY
                               SUITE 280
 4                             IRVINE, CALIFORNIA  92604

 5   FOR THE DEFENDANT:        STEPHANIE YONEKURA, ACTING
                               UNITED STATES ATTORNEY
 6                             LEON WEIDMAN, CHIEF
                               CIVIL DIVISION
 7                             ASSISTANT UNITED STATES ATTORNEY
                               BY:  FRANK D. KORTUM
 8                             ASSISTANT UNITED STATES ATTORNEY
                               312 NORTH SPRING STREET
 9                             SUITE 1400
                               LOS ANGELES, CALIFORNIA  90012
10                             (TELEPHONICALLY)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                          I N D E X
      CASE NO. SA CV 14-01795-DOC(DFM)          DECEMBER 12, 2014
 2
      PROCEEDINGS:   HEARING ON PLAINTIFFS' MOTION FOR RETURN
 3                   OF PROPERTY

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SANTA ANA, CALIFORNIA; FRIDAY, DECEMBER 12, 2014; 9:59 A.M.

 2                THE CLERK:  PLEASE REMAIN SEATED AND COME TO ORDER.

 3                THIS UNITED STATES DISTRICT COURT IS NOW IN

 4   SESSION.

 5                THE HONORABLE DOUGLAS F. MC CORMICK, UNITED STATES

 6   MAGISTRATE JUDGE, PRESIDING.

 7                CALLING SANTA ANA CIVIL NUMBER 14-01795, TODD AND

 8   DAWN TUCKER VERSUS UNITED STATES OF AMERICA.

 9                COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

10   RECORD.

11                MR. KHOURI:  GOOD MORNING, YOUR HONOR.

12                MIKE KHOURI, SPELLED K-H-O-U-R-I, ON BEHALF OF TODD

13   AND DAWN TUCKER, HUSBAND AND WIFE, WHO ARE PRESENT IN COURT,

14   AND CAIR MEDICAL INC. AND THE RELATED ENTITIES THAT WERE THE

15   SUBJECT OF THE SEIZURE WARRANTS.

16                THE COURT:  MR. KHOURI, GOOD TO SEE YOU.

17                MR. KHOURI:  GOOD TO SEE YOU, TOO, YOUR HONOR.

18                MR. KORTUM:  GOOD MORNING, YOUR HONOR.

19                AUSA FRANK KORTUM FOR THE GOVERNMENT.

20                THANK YOU FOR ACCOMMODATING ME BY ALLOWING ME TO

21   APPEAR TELEPHONICALLY TODAY.

22                THE COURT:  NOT A PROBLEM, MR. KORTUM.  I

23   UNDERSTAND YOU HAD A FAMILY MEDICAL EMERGENCY.  AND --

24                MR. KORTUM:  YES, YOUR HONOR.

25                THE COURT:  -- THAT'S FINE.
```

1          AND LET ME TELL YOU WHAT MY TENTATIVE THOUGHTS ARE,

2    AND THEN I HAVE A COUPLE OF QUESTIONS.  AND THEN I'LL LET YOU

3    EACH MAKE COMMENTS ABOUT MY TENTATIVE THOUGHTS.  AND WE CAN

4    GO FROM THERE.

5          MY TENTATIVE IS I THINK I DO HAVE TO CONTINUE THIS

6    HEARING FOR UP TO 75 DAYS TO GIVE -- FOR UP TO 75 DAYS.

7          MR. KHOURI, I DON'T -- I DON'T SEE HOW THIS MOTION

8    IS MADE UNDER ANY PROVISION BUT RULE 41(G).  YOUR PAPERS CITE

9    18 U.S.C. 981(B)(3), BUT THAT -- ALL THAT PROVISION PROVIDES

10   IS A BASIS -- THAT PROVISION DOES NOT PROVIDE A BASIS FOR THE

11   MOTION.  IT SIMPLY SAYS WHERE A MOTION MAY BE BROUGHT.  AND,

12   SO, I DON'T SEE ANY OTHER PROVISION AVAILABLE HERE BUT 41(G).

13         WE'RE IN THIS POST-SEIZURE PRE-FORFEITURE COMPLAINT

14   POSTURE.  AND IT SEEMS TO ME FROM THE CASES I'VE READ -- THE

15   CASES YOU'VE CITED, THE CASES THAT MR. KORTUM CITED, SOME OF

16   THE OTHER CASES I FOUND -- THAT RULE 41(G) IS THE REMEDY

17   HERE.

18         THE GOVERNMENT ARGUES THAT YOU MUST SERVE YOUR

19   MOTION IN ACCORDANCE WITH RULE 4(I) OF THE FEDERAL RULES OF

20   CIVIL PROCEDURE.  AND I THINK THAT ARGUMENT IS WELL TAKEN.  I

21   THINK IT'S CLEAR THAT WHERE, AS HERE, THERE'S NO CRIMINAL

22   PROCEEDING, AND WE HAVE A RULE 41(G) MOTION, WE HAVE TO

23   CONSIDER THAT AS A CIVIL COMPLAINT.  AND THAT'S GOVERNED BY

24   THE FEDERAL RULES.  AND THAT MEANS WE -- WE HAVE TO GO

25   THROUGH 4(I).  AND THAT MEANS THE GOVERNMENT HAS 60 DAYS TO

6

1    RESPOND.

2          NOW -- SO, THAT'S WHAT LEADS ME TO SAY I THINK WE

3    HAVE TO CONTINUE THE HEARING.

4          I UNDERSTAND THAT YOU AND YOUR CLIENTS AREN'T GOING

5    TO BE VERY HAPPY ABOUT THAT.  AND I THINK THAT'S -- I THINK

6    THAT'S UNDERSTANDABLE.  IF YOU HAVEN'T -- IF YOU'VE SERVED

7    THE MOTION, THEN, MAYBE WE CAN CUT SOME OF THAT 75 DAYS DOWN.

8    I DON'T KNOW WHERE YOU ARE WITH THAT.  I'M GOING TO ASK.

9    IT'S GOING TO BE MY FIRST QUESTION.

10          AND I DON'T THINK MR. KORTUM HAS TO WAIT THE ENTIRE

11    60 DAYS.  IT MAY WELL BE THAT HE -- HE FEELS THAT HE WANTS TO

12    MOVE AHEAD MORE QUICKLY WITH THIS.  BECAUSE I THINK THAT ONE

13    OF THE ISSUES THAT WILL BE BEFORE ME IF WE DO GO FORWARD IS

14    WHETHER I SHOULD EXERCISE ESSENTIALLY MY EQUITABLE POWER TO

15    HEAR THIS CASE.  THAT'S ESSENTIALLY THE STANDARD I HAVE TO

16    DECIDE.  THERE'S A FOUR-PART STANDARD.  AND ONE OF THOSE --

17    YOU KNOW, ONE OF THOSE PART -- PART OF THAT IS REALLY WHAT --

18    WHERE THE GOVERNMENT HAS DISPLAYED A CALLOUS DISREGARD FOR

19    YOUR CLIENT'S CONSTITUTIONAL RIGHTS.

20          AND IT MIGHT BE IN MR. KORTUM'S INTEREST -- IT

21    MIGHT BE IN THE GOVERNMENT'S INTEREST TO RESPOND MORE

22    QUICKLY.

23          SO, THAT IS WHERE I THINK WE ARE.  SO, I DON'T

24    THINK WE QUITE GET TO THE HEART OF THE MATTER YET, WHICH IS

25    WHETHER THERE WAS A LEGAL BASIS FOR THE SEIZURE.

1          MR. KHOURI:  I -- I'M SORRY, YOUR HONOR, TO

2     INTERRUPT.

3          THE COURT:  NO.  I WANT -- I WANT TO -- SO, FIRST,

4     HAVE YOU -- HAVE YOU SERVED THE MOTION?  OR ARE WE STILL AT

5     AN UNSERVED STATUS?

6          MR. KHOURI:  AS FAR AS THE FEDERAL RULES AND RULE

7     4(I) I BELIEVE IT IS --

8          THE COURT:  CORRECT.

9          MR. KHOURI:  -- SERVICE HAS NOT BEEN MADE.

10         THE COURT:  OKAY.

11         MR. KHOURI:  HOWEVER --

12         THE COURT:  LET ME ASK ANOTHER --

13         MR. KHOURI:  I'M --

14         SURE.

15         THE COURT:  LET ME ASK MR. KORTUM A QUESTION.

16         WHAT'S THE -- WHERE ARE WE WITH RESPECT TO THE

17    ADMINISTRATIVE FORFEITURE AND WHAT ARE THE DEADLINES THERE?

18         MR. KORTUM:  WELL, YOUR HONOR, THE -- I BELIEVE THE

19    MATTER IS IN THE PROCESS OF BEING REFERRED FROM THE AGENCY,

20    THE SEIZING AGENCY, THE FBI, TO OUR OFFICE FOR CIVIL JUDICIAL

21    FORFEITURE AFTER -- AFTER WE RECEIVE THE REFERRAL -- WELL, WE

22    HAVE 90 DAYS AFTER MR. KHOURI'S CLIENT FILES ITS CLAIM WITHIN

23    WHICH TO FILE A CIVIL COMPLAINT.

24         THE COURT:  HAVE CLAIMS BEEN FILED YET?

25         MR. KORTUM:  A CLAIM HAS BEEN FILED.  AND I BELIEVE

8

1    A REFERRAL IS BEING MADE TO OUR OFFICE.

2              THE COURT:  OKAY.  SO, ONCE -- YOU SAID ONCE THE

3    CLAIMS ARE FILED, YOU HAVE HOW MANY DAYS? -- 60 OR 90.

4              MR. KORTUM:  90 DAYS.

5              THE COURT:  IT'S 90?

6              MR. KORTUM:  UH-HUH.

7              THE COURT:  OKAY.  AND, SO, THAT 90-DAY CLOCK HAS

8    STARTED RUNNING?

9              MR. KORTUM:  YES, YOUR HONOR.

10             THE COURT:  OKAY.  BUT IT HASN'T BEEN RUNNING.

11   WE'RE STILL VERY CLOSE TO 90 DAYS.

12             MR. KORTUM:  CORRECT.  I THINK THE CLAIM WAS FILED

13   -- AFTER MR. KHOURI'S CLIENT FILED THE MOTION THEY ALSO

14   FILED A CLAIM -- OR THEY -- THEY RECEIVED NOTICE.  AND THEN

15   AFTER THAT FILED A CLAIM.  SO, THAT'S ALL OCCURRED DURING THE

16   TIME THAT THIS MOTION HAS BEEN PENDING.

17             THE COURT:  OKAY.

18             SO, TO SOME EXTENT YOU ARE GOING TO HAVE A LITTLE

19   BIT OF A -- I MEAN, BECAUSE I THINK THAT ONE OF THE ISSUES

20   UNDER -- THAT I'M GOING TO HAVE TO CONFRONT IF WE LOOK AT

21   THIS AS A 41(G) MOTION IS WHETHER THE REMEDY AT LAW IS

22   ADEQUATE.  AND, OBVIOUSLY, I THINK TO SOME EXTENT YOU CAN

23   SHORT-CIRCUIT THAT PROCESS SOMEWHAT BY FILING A CIVIL

24   FORFEITURE COMPLAINT.  BECAUSE AT THAT POINT WE'RE -- YOU

25   KNOW, I THINK -- I THINK IT'S HARD TO ARGUE THAT THERE'S NOT

1  A REMEDY IN THAT PROCEEDING.

2          MR. KORTUM:  YES.  AND THAT IS THE PLAN.

3          THE COURT:  ALL RIGHT.

4          ONE OTHER COMMENT, MR. KHOURI.  AND THEN I DO WANT

5  TO GIVE YOU A CHANCE TO SAY WHATEVER YOU WANT TO SAY AND

6  PERSUADE ME OF WHY I'M WRONG BECAUSE I MAY WELL BE WRONG.

7          YOU SUPPLIED ME WITH -- AND I DID -- I DID -- I DID

8  READ EVERYTHING ON THE MERITS AS WELL -- YOU SUPPLIED ME WITH

9  SEVERAL ALJ DECISIONS ON THE MERITS.

10          MR. KHOURI:  YES, YOUR HONOR.

11          THE COURT:  AND THEY WERE VERY HARD TO READ.

12          MR. KHOURI:  OH.

13          THE COURT:  THE PHOTOCOPIES WERE VERY BAD.

14          SO, IT WOULD BE HELPFUL IF WE ARE GOING TO -- IF WE

15  ARE GOING TO AT SOME POINT HAVE A DISCUSSION ABOUT THE MERITS

16  FOR ME TO GET A BETTER COPY.  I DON'T KNOW WHETHER YOUR

17  COPIES ARE BAD OR IF THEY GOT --

18          MR. KHOURI:  WE CAN GET YOU A BETTER COPY.

19          THE COURT:  OKAY.  I FIGURED YOU COULD.

20          MR. KHOURI:  YEAH.  I'M SURE WE CAN ESPECIALLY

21  SINCE I JUST PURCHASED A BRAND NEW COPY MACHINE.

22          THE COURT:  WELL, IT MAY -- IT MAY HAVE BEEN NOT

23  YOUR FAULT.  IT MAY HAVE BEEN THE -- IT MAY HAVE BEEN THE

24  COPIES FROM THE GOVERNMENT -- FROM THE ALJ YOU GOT WERE BAD.

25  AND YOU SIMPLY PASSED ALONG TO ME THE BAD COPIES, BUT I JUST

1   --

2          MR. KHOURI:  WE'LL FIX THAT.

3          THE COURT:  -- AND I WOULD SAY MY OLD EYES --

4          MR. KHOURI:  YEAH.

5          THE COURT:  BUT MY EYES AREN'T THAT OLD.

6          MR. KHOURI:  OH, NO, YOUR HONOR.

7          THE COURT:  MY OLD EYES COULDN'T -- COULDN'T HARDLY

8   MAKE MUCH OUT.

9          MR. KHOURI:  MINE ARE MUCH --

10         THE COURT:  AND SO --

11         MR. KHOURI:  -- OLDER.

12         THE COURT:  SO, GO AHEAD, MR. -- NO.  OBVIOUSLY,

13  MR. KHOURI, YOU'RE THE ONE WHO'S I THINK PROBABLY -- YOU AND

14  THE CLIENTS ARE MOST AGGRIEVED BY I THINK A CONTINUANCE AT

15  THIS POINT.  SO, LET'S --

16         MR. KHOURI:  RIGHT.

17         THE COURT:  LET'S HAVE YOUR COMMENTS.

18         MR. KHOURI:  I WOULD URGE THE COURT TO RECONSIDER

19  ON EQUITABLE GROUNDS.

20         FIRST OF ALL, THIS TYPE OF PROCEEDING IS A LOT

21  DIFFERENT THAN, FOR INSTANCE, IF WE WERE SUING THE GOVERNMENT

22  IN A 1983 ACTION OR SOMETHING OF THAT SORT.

23         THE GOVERNMENT HAS BEEN DEALING WITH CAIR MEDICAL

24  AND THE ISSUES SURROUNDING CAIR MEDICAL FOR PROBABLY AT LEAST

25  A YEAR.

1          WHEN THE CIVIL SEIZURE CAME DOWN, I NOTIFIED THE

2     ASSISTANT UNITED STATES ATTORNEY ON THE CRIMINAL SIDE, MS.

3     JOSEPH, THAT THE MOTION FOR RETURN OF PROPERTY WOULD PROBABLY

4     SET AROUND THIS TIME.

5          THERE WAS CERTAINLY NO OPPOSITION AT THAT TIME TO

6     THIS MOTION IN THE SENSE OF THE SERVICE OF IT -- NOT IN THE

7     SENSE OF THE SUBSTANCE OF IT.

8          BUT THE POINT I'M TRYING TO GET AT IS THAT THE

9     UNITED STATES ATTORNEY'S OFFICE HERE IN THIS BUILDING ON THE

10    CRIMINAL SIDE AND THE UNITED STATES ATTORNEY'S OFFICE UP IN

11    LOS ANGELES ON THE CIVIL SIDE HAVE BEEN INVESTIGATING THIS

12    CASE FOR QUITE SOME TIME.  AND WHEN THE MOTION WAS SERVED --

13    IF WE'RE GOING TO GET TECHNICAL ABOUT IT -- AND THE COURT

14    KNOWS I WAS NEVER A LAW-REVIEW TYPE.  AND BEING TECHNICAL IS

15    PROBABLY NOT ONE OF MY FORTES.  BUT THE FACT OF THE MATTER IS

16    THAT THERE WAS NO MOTION TO QUASH, WHICH I THINK WOULD HAVE

17    BEEN THE APPROPRIATE PROCEDURAL REMEDY UNDER THE FEDERAL

18    RULES OF CIVIL PROCEDURE.  INSTEAD, WHAT THERE WAS WAS AN

19    APPEARANCE SORT OF LIKE THE WAY IF A COMPLAINT IS SERVED, AND

20    A PARTY ANSWERS IN A CIVIL CASE, A DEFECT IN SERVICE IS

21    WAIVED.

22          AND I THINK THAT WHEN WE ANALYZE THE TECHNICAL

23    REQUIREMENTS OF SERVICE, THE GOVERNMENT BY ITS CONDUCT IS

24    EITHER ESTOPED FROM RAISING A DEFECT IN SERVICE BECAUSE

25    THEY'VE BEEN INVESTIGATING THIS CASE FROM BOTH THE CIVIL AND

1    CRIMINAL ANGLES FOR A LONG TIME, OR THE GOVERNMENT HAS WAIVED

2    ANY DEFECT IN SERVICE BY FILING AN OPPOSITION INDICATING

3    THEY'RE READY TO GO AND NOT FILING --

4              THE COURT:  WELL, LET ME ASK YOU.

5              MR. KHOURI:  -- A MOTION TO QUASH.

6              THE COURT:  LET ME ASK YOU ABOUT THAT.

7              MR. KHOURI:  BUT --

8              THE COURT:  I MEAN, THE FIRST ARGUMENT MR. KORTUM

9    MAKES IS THAT THE -- IN HIS OPPOSITION IS THAT THE --

10             MR. KORTUM:  YOUR HONOR, I DIDN'T HEAR THE -- YOUR

11   LAST STATEMENT.

12             THE COURT:  YES.  I SAID MR. -- I SAID THE FIRST

13   ARGUMENT MR. KORTUM MADE IN HIS OPPOSITION WAS THAT SERVICE

14   WAS NOT PROPER.  I MEAN, HOW -- DID HE FILE ANYTHING PRIOR TO

15   THAT THAT INDICATED -- OR ARE YOU SAYING THAT THAT WAS NOT

16   THE PROPER PROCEDURAL VEHICLE FOR HIM TO RAISE THIS ARGUMENT?

17             MR. KHOURI:  I THINK IF THE GOVERNMENT IS GOING TO

18   RAISE THE ISSUE OF A DEFECT IN SERVICE, THE APPROPRIATE

19   MOTION IS A MOTION TO QUASH.  IT IS NOT FILING AN OPPOSITION

20   WHICH CONSTITUTES IN MY MIND AN APPEARANCE.  AND ARGUING THE

21   CASE ON THE MERITS IN -- IN MY MIND CONSTITUTES A WAIVER OF

22   ANY DEFECT IN SERVICE.

23             WHAT WE'RE TALKING ABOUT HERE GIVEN THE FACT THAT

24   SUBSTANTIVE ARGUMENTS WERE MADE BY THE GOVERNMENT IN THEIR

25   OPPOSITION IS REALLY WHAT'S FAIR AND WHAT'S EQUITABLE GIVEN

1    THE TOTALITY OF CIRCUMSTANCES THAT WE HAVE HERE.

2            WE DON'T WANT TO HAVE TO SERVE THEM.  WE DIDN'T

3    WANT TO HAVE TO SERVE THEM IN THE BEGINNING WHEN THAT WAS

4    POINTED TO US BY EMAIL BECAUSE WE'D HAVE TO WAIT ANOTHER 60

5    DAYS AT LEAST BEFORE THE GOVERNMENT IS ENTITLED TO FILE OR

6    HAS TO FILE A RESPONSE.

7            WHAT IS I THINK SO STRIKING ABOUT WHAT HAS HAPPENED

8    IN THIS SITUATION AND IS HAPPENING A LOT ALL ACROSS THE

9    COUNTRY AS I SEE IT IS THE GOVERNMENT IS INVESTIGATING FROM

10   THE CRIMINAL SIDE THE FILING OF INDICTMENTS.  NO INDICTMENT

11   HAS BEEN ISSUED.

12           THE GOVERNMENT IS INVESTIGATING ON THE CIVIL SIDE

13   THE RECOUPMENT OF MONEY.  BUT NO FALSE CLAIMS ACT CASE AT

14   LEAST HAS BEEN SERVED ON MY CLIENTS.  NO FALSE CLAIMS ACT

15   CASE HAS BEEN SERVED BY THE GOVERNMENT TO RECOUP MONEY.  AND

16   OUT OF THE BLUE COMES THIS CIVIL FORFEITURE SEIZURE STATUTE

17   -- OR WARRANT THAT WAS ISSUED BY THE COURT.

18           AND, NOW, THE NEXT STEP THAT THE GOVERNMENT MAKES

19   -- AND REALLY I GUESS YOU COULD CALL IT SORT OF CHECKERS OR

20   A CHESS GAME.  BUT THE NEXT STEP THAT THE GOVERNMENT MAKES IS

21   SAYING, WELL, YOU DIDN'T SERVE US RIGHT.  SO, YOU HAVE TO

22   WAIT ANOTHER 60 DAYS.

23           IN THE MEANTIME AT LEAST THREE BUSINESSES HAVE HAD

24   TO CLOSE -- PROBABLY THREE OR FOUR DOZEN EMPLOYEES HAVE BEEN

25   LAID OFF.  MY CLIENT CAN'T GET MONEY -- HAS TO BORROW MONEY

1    TO HIRE ME AND TO BUY FOOD.  CAN'T MAKE HIS MORTGAGE

2    PAYMENTS.  CAN'T PURCHASE HIS WIFE'S MEDICATION AND GO TO THE

3    DOCTOR -- HAVE HIS WIFE GO TO THE DOCTOR AT A TIME WHEN SHE

4    REALLY NEEDS IT BECAUSE I THINK WE INDICATED IN THE PAPERS

5    THAT SHE HAS -- IS SUFFERING FROM CANCER.

6            HAD THE GOVERNMENT ELECTED TO BRING A SUIT FROM THE

7    BEGINNING, THEN --

8            THE COURT:  WELL, ALL OF THESE -- ALL OF THESE, MR.

9    KHOURI, ARE FAIRLY COMMON ARGUMENTS ABOUT THE CIVIL

10   FORFEITURE PROCESS.  AND THEY ARE OPINIONS THAT MANY FOLKS

11   SHARE AND HAVE -- THIS HAS LED TO SOME -- SOME REFORM OF THAT

12   PROCESS.  BUT IF IT'S NOT -- YOU KNOW, AGAIN, THE PROCESS

13   ACTS OUT IN A WAY THAT DOES EXACTLY -- THAT DOES EXACTLY AS

14   WHAT YOU DESCRIBED.  IF THE GOVERNMENT -- IF THE GOVERNMENT

15   OBTAINS SEIZURE WARRANTS, IT PLACES THE PEOPLE WITH OWNERSHIP

16   INTEREST IN THE SEIZED ASSETS IN THE POSITION OF HAVING TO

17   ESSENTIALLY FIGHT TO GET THEIR ASSETS BACK.

18           YOU KNOW, AND -- AND I HEAR YOU ON THAT.  AND, SO,

19   THERE IS THIS, I THINK -- AND IT'S NOT WIDELY USED.  THERE

20   AREN'T A LOT OF CASES ON IT.  THERE IS THIS PROCESS UNDER

21   RULE 41(G) WHERE YOU ESSENTIALLY DO WHAT YOU'RE ASKING ME TO

22   DO, WHICH IS COME IN AND ASK THE COURT TO EXERCISE ITS

23   EQUITABLE JURISDICTION.

24           AND I WILL TAKE A LOOK AT THE -- AT THE WAIVER

25   ARGUMENT THAT YOU'VE MADE.  AND, PERHAPS, MR. KORTUM DIDN'T

 1   PREPARE -- DIDN'T PRESENT THIS CORRECTLY.  AND IF -- YOU

 2   KNOW, I'M NOT -- I'M NOT INCLINED TO GIVE THE GOVERNMENT THE

 3   BENEFIT OF THE DOUBT ON THIS ARGUMENT, BUT IF --

 4             MR. KHOURI:  I UNDERSTAND THAT, YOUR HONOR.

 5             THE COURT:  IF -- I THINK IF IT'S SOMETHING THAT IS

 6   A -- IT'S A -- IF IT'S A LEGAL BASIS FOR THEM TO INSIST UPON

 7   THIS SERVICE, THEN, I THINK TO SOME EXTENT WE ARE -- WE'RE

 8   STUCK WITH THAT.

 9             SO, I WANT TO LOOK AT THE -- WHETHER THERE IS A

10   WAIVER HERE.  AND IF THERE IS ONE, YOU KNOW, I WOULD BE

11   INCLINED.

12             YOU KNOW, MR. KORTUM I THINK WENT AHEAD AND

13   ADDRESSED THE MERITS.  I THINK THAT'S PROBABLY SMART ON HIS

14   PART NOT TO LEAVE THE GOVERNMENT -- NOT TO LEAVE THE COURT

15   WONDERING WHETHER THERE IS ANY ANSWER ON THE MERITS.

16             I ALSO KNOW THAT WHEN -- I THINK THERE WAS A

17   SIMILAR MATTER IN FRONT OF JUDGE ROSENBLUTH RECENTLY.  I

18   THINK SHE -- SHE DID I THINK GO AHEAD AND ADDRESS THE MERITS

19   A LITTLE MORE QUICKLY.  AND, SO, MAYBE MR. KORTUM THOUGHT HE

20   WAS -- THAT HE WAS DOUBLY WELL SERVED TO DO THAT.

21             ANY OTHER COMMENTS?  I DIDN'T MEAN TO CUT YOU OFF.

22             MR. KHOURI:  NO.  AND YOU CERTAINLY DIDN'T, YOUR

23   HONOR.  AND YOUR HONOR IS ENTITLED TO CUT ME OFF WHENEVER

24   YOUR HONOR WANTS.  BUT --

25             THE COURT:  NO.  I DON'T -- I TRY NOT TO.

1          MR. KHOURI:  BUT IT'S NOT THE CIVIL-FORFEITURE

2    PROCESS THAT REALLY IS WHAT IS THE PROBLEM.  IT'S NOT BEING

3    GIVEN NOTICE THAT THE GOVERNMENT WANTS TO SEIZE OUR ASSETS.

4          THE COURT:  WELL, THAT -- BUT THAT WOULD --

5          MR. KHOURI:  AND --

6          THE COURT:  THAT WOULD -- BUT THAT WOULD BE -- THAT

7    WOULD BE TO SOME EXTENT -- I HEAR WHAT YOU'RE SAYING, BUT --

8          MR. KHOURI:  WELL --

9          THE COURT:  -- THAT WOULD BE -- THAT WOULD BE -- I

10   DON'T KNOW WANT TO SAY SILLY IS NOT THE RIGHT WORD, BUT --

11         MR. KHOURI:  I KNOW WHAT --

12         THE COURT:  -- THAT WOULD BE --

13         MR. KHOURI:  I KNOW WHAT THE COURT IS GETTING AT.

14   IN A DIFFERENT CASE, I WOULD AGREE.  IN A DIFFERENT TYPE OF

15   CRIME, IN A DRUG CASE OR -- OR A CASE WHERE MONEY IS BEING

16   LAUNDERED FOR TERRORISM PURPOSES OR THINGS LIKE THAT, OF

17   COURSE.

18         WHAT WE'RE DEALING WITH HERE IS A COMPANY THAT

19   SELLS TILT-UP WHEELCHAIRS TO SKILLED NURSING FACILITIES TO

20   PATIENTS THAT ARE BED-RIDDEN WHO ARE PLACED IN THOSE

21   WHEELCHAIRS TO PREVENT BED SORES.  THAT'S WHAT WE'RE DEALING

22   WITH.  WE'RE NOT DEALING WITH NARCOTICS.  WE'RE NOT DEALING

23   WITH TERRORISM.  WE'RE NOT DEALING WITH GAMBLING, ORGANIZED

24   CRIME.  WE'RE DEALING WITH MR. AND MRS. TUCKER FROM SAN JUAN

25   CAPISTRANO.

1          THE COURT:  UNDERSTOOD.

2          MR. KHOURI:  NOW-- NOW -- AND WHAT THE COURT WAS

3    NOT TOLD BY THE GOVERNMENT WAS THAT MR. TUCKER HAD THIS SAME

4    ISSUE PRESENTED TO THE COURT IN THE SEIZURE WARRANTS

5    LITIGATED BY AN ADMINISTRATIVE LAW JUDGE SITTING ON BEHALF OF

6    THE DEPARTMENT OF HEALTH AND HUMAN SERVICES OF THE UNITED

7    STATES WHO RULED IN HIS FAVOR.

8          WHAT THE GOVERNMENT DIDN'T TELL THE COURT WHEN THAT

9    SEIZURE WARRANT WAS ISSUED WAS THAT MR. AND MRS. TUCKER HAD

10   APPEALED PAYMENT DENIALS FROM MEDICARE TO MEDICARE

11   CONTRACTORS WHOSE -- WHOSE JOB IT IS TO MAKE DECISIONS ABOUT

12   WHETHER THE INITIAL PAYMENT DENIALS BY THE MEDICARE

13   ADMINISTRATION ARE CORRECT.

14          THE COURT:  AND --

15          MR. KHOURI:  WHAT -- AND --

16          THE COURT: -- I -- YOU KNOW, WE CAN GET TO THE --

17   WE CAN TALK A LITTLE BIT ABOUT THE MERITS BECAUSE AS I

18   INDICATED I DID READ THE PAPERS ON THE MERITS.  AND I DID

19   READ -- I TRIED TO READ THOSE ALJ DECISIONS.  AND IT SEEMED

20   TO ME THAT THE GOVERNMENT, AS I UNDERSTAND THE THEORY

21   PRESENTED TO ME IN THEIR SEIZURE WARRANTS, WAS PRESENTING

22   REALLY TWO DIFFERENT THEORIES OF FRAUD.  ONE WAS THAT -- THAT

23   WHEELCHAIRS WERE BEING ORDERED FOR PATIENTS WHERE THEY WERE

24   NOT MEDICALLY NECESSARY.  AND, TWO, WHEELCHAIRS WERE BEING

25   ORDERED FOR PATIENTS WHERE THEY WERE NOT ELIGIBLE FOR

1    MEDICARE REIMBURSEMENT BECAUSE THE -- BECAUSE OF WHERE THEY

2    RESIDED.

3              MR. KHOURI:  RIGHT.

4              THE COURT:  NOW, WITH RESPECT TO THE ALJ DECISIONS,

5    I -- FROM THE PARTS I COULD READ, IT SEEMED TO ME THAT THERE

6    WAS SOME DISCUSSION IN THOSE ALJ DECISIONS OF THE FIRST

7    ISSUE.  THERE WAS VERY LITTLE DISCUSSION, OR I COULDN'T FIND

8    ANY DISCUSSION OF THE SECOND ISSUE.  IT COULD BE THOSE PARTS

9    WERE THE PARTS I COULDN'T READ.

10             SO --

11             MR. KHOURI:  I THINK SO.

12             THE COURT:  BUT THE -- YOU KNOW, I THINK THAT WHAT

13   WE'RE -- WHEN WE GET TO THE MERITS, IF WE GET TO THE MERITS

14   IN THIS -- IN THIS MATTER, OR IF THE MERITS ARE REACHED IN

15   THE CIVIL FORFEITURE MATTER, I DO THINK, YOU KNOW, THE FACT

16   THAT THERE MAY BE SOME FAVORABLE RULINGS FROM THE ALJ, ONE OR

17   MORE ALJS ON THESE ISSUES, ARE GOING TO BE IMPORTANT.

18             ALL RIGHT.  ANY OTHER THOUGHTS BEFORE WE HEAR FROM

19   MR. KORTUM?

20             MR. KHOURI:  ONLY, YOUR HONOR, THAT THE ALJ

21   DECISIONS THAT I'M FAMILIAR WITH TREAT BOTH ISSUES REGARDING

22   MEDICAL NECESSITY AND ALSO REGARDING WHERE THEY'RE RESIDING.

23             AND THE DOCUMENTATION ATTACHED TO OUR INITIAL

24   MOTION I BELIEVE TREATS BOTH ISSUES.  THESE CLIENTS BEFORE

25   THEY PROVIDE A WHEELCHAIR TO SOMEONE IN A SKILLED NURSING

1   FACILITY GO THROUGH NUMEROUS LEVELS OF VERIFICATION OF

2   MEDICAL NECESSITY, INCLUDING THE OBTAINING OF A DOCTOR'S

3   ORDER, THE REVIEW OF DOCTORS' NOTES, THE VISIT OF THE PATIENT

4   BY A TECHNICIAN WHO FITS THE WHEELCHAIR THAT VERIFIES THE

5   EXTENT OF DISABILITY -- AND THEN VERIFYING THAT THESE

6   PATIENTS ARE IN ONLY CUSTODIAL-CARE STATUS, EVEN THOUGH

7   THEY'RE IN A SKILLED NURSING FACILITY AND THEY'RE NOT

8   RECEIVING SKILLED NURSING CARE.

9           NOW, HAD THE GOVERNMENT EXERCISED ANY AMOUNT OF

10  WHAT I WOULD CONSIDER AND WHAT I BELIEVE THE COURT WOULD

11  SHARE IN MY BELIEF TO BE SOME DISCRETION -- AND THE COURT

12  KNOWS ME.  I'M NOT ONE TO THROW DAGGERS AT THE GOVERNMENT.

13  BUT JUST SO THAT THERE'S NO MISUNDERSTANDING, TODAY I AM --

14  THEN BEFORE THE COURT SIGNED THE WARRANT BASED UPON DEFICIENT

15  INFORMATION -- IT IS MY BELIEF -- BEFORE 50 PEOPLE LOST THEIR

16  JOBS AND THEIR HEALTH INSURANCE AND THE ABILITY TO PAY THEIR

17  MORTGAGES -- AND, YOU KNOW, I WATCH MY EMPLOYEES GO OUT AND

18  GET MARRIED AND BUY HOUSES AND HAVE CHILDREN.  AND BEFORE MR.

19  AND MRS. TUCKER ARE MADE DESTITUTE AND CAN'T BUY THEIR -- BUY

20  FOOD -- CAN'T GET MONEY OUT OF THE ATM TO PURCHASE MRS.

21  TUCKER'S MEDICATION -- BEFORE ALL THAT HAPPENED -- AND WE'RE

22  NOT TALKING ABOUT SOMEBODY AT GUANTANAMO.  WE'RE TALKING

23  ABOUT MR. AND MRS. TUCKER FROM SAN JUAN CAPISTRANO -- BEFORE

24  THEY CAN'T PAY THEIR KIDS' TUITION, DON'T YOU THINK THE

25  GOVERNMENT SHOULD HAVE MAYBE GIVEN ME A CALL AND SAID WE'RE

1    GOING TO HAVE THIS HEARING.  WOULD YOU STIPULATE TO SOME KIND

2    OF FREEZING OF THE ASSETS OR GIVE ME SOME KIND OF EX-PARTE

3    NOTICE.

4              THE COURT:  WELL, I MEAN, BUT THE FACT -- THE

5    SIMPLE FACT IS THEY'RE NOT --

6              MR. KHOURI:  AND --

7              THE COURT:  -- THEY'RE NOT REQUIRED TO DO ANY OF

8    THAT, AS YOU KNOW.  AS -- I MEAN, THEY'RE NOT REQUIRED TO

9    GIVE YOU EX-PARTE NOTICE.  THEY'RE PERMITTED TO COME IN

10   UNDER THE SEIZURE FACILITIES.

11             AND I HEAR WHAT -- I HEAR WHAT YOU'RE SAYING.  AND

12   I WANT TO COME BACK TO -- I WANT TO COME BACK TO SOME OF

13   THOSE EQUITABLE CONCERNS IN A MOMENT.  AND I WILL.

14             MR. KHOURI:  AND NOW THE GOVERNMENT SAYS EVEN

15   THOUGH WE HAVE THE PAPERS, AND EVEN THOUGH WE HAD ENOUGH TIME

16   TO PREPARE TO MAKE SUBSTANTIVE ARGUMENTS, AND EVEN THOUGH

17   WE'VE KNOWN ABOUT YOUR PLANS TO MAKE THIS MOTION FOR MONTHS,

18   YOU DIDN'T SERVE US RIGHT.

19             AND -- AND THIS MOTION IS NOT A COMMON ONE.  SO, I

20   TAKE FULL RESPONSIBILITY FOR THE CONFUSION THAT WAS ABUNDANT

21   IN THE CLERK'S OFFICE ON HOW TO GET THIS THING FILED.

22             THE COURT:  OH, THAT'S NOT -- THAT'S NOT THE POINT

23   AT THIS POINT.

24             MR. KHOURI:  YEAH.  AND SO -- AND JUST -- THIS HAS

25   BEEN A LONG PROCESS --

1          THE COURT:  LET'S HEAR FROM MR. KORTUM.  I DON'T

2    WANT TO -- I DON'T WANT TO LEAVE HIM SUFFERING ON THE END OF

3    A PHONE LINE FOREVER.

4          AND YOU CAN -- MORE THAN WELCOME TO HAVE A SEAT.  I

5    DON'T WANT TO MAKE YOU HAVE TO STAND WHILE HE SPEAKS.

6          MR. KORTUM, COMMENTS, PLEASE.

7          MR. KORTUM:  YES, YOUR HONOR.

8          YOU EXPRESSED SOME INTEREST IN THE ALJ DECISIONS.

9    AND BEFORE YOU GET TOO FAR INTO THOSE I WOULD WANT TO BRING

10   TO YOUR ATTENTION THE -- A RULE OF LAW THAT SAYS THAT

11   UNREVIEWED ALJ DECISIONS HAVE NO PRECEDENTIAL VALUE.  AND IN

12   SUPPORT OF THAT I WOULD CITE THE CASE OF FABI CONSTRUCTION

13   COMPANY VERSUS SECRETARY OF LABOR, 370 F.3D 29 AT PAGE 35,

14   FOOTNOTE 7.

15         YOU KNOW, THE ALJ JUDGES -- YOU KNOW, I'M SURE THEY

16   TRY THEIR HARDEST, BUT THEY'RE NOT ARTICLE III JUDGES, AND

17   THEY DON'T NECESSARILY GIVE THESE ISSUES THE FULL ATTENTION

18   THAT --

19         THE COURT:  WE CAN'T ALL BE ARTICLE III JUDGES, MR.

20   KORTUM.

21         MR. KORTUM:  WHAT'S THAT?

22         THE COURT:  I SAID WE CAN'T ALL BE ARTICLE III

23   JUDGES, MR. KORTUM.

24         MR. KORTUM:  OH, WELL, THEY'RE NOT -- THEY'RE NOT

25   MAGISTRATE JUDGES EITHER.

1          THE COURT:  ALL RIGHT.

2          MR. KORTUM:  I DON'T MEAN TO --

3          THE COURT:  I WAS -- I WAS JOSHING.

4          MR. KORTUM:  YEAH.

5          THE COURT:  GO AHEAD.

6          MR. KORTUM:  SO, THAT'S WHAT I WOULD -- YOU KNOW,

7   YOU'RE CERTAINLY -- YOU KNOW, HE HAS PRESENTED THE ALJ

8   DECISIONS.  BUT I WOULD URGE YOU TO READ THEM IN THE LIGHT OF

9   THE FABI CONSTRUCTION CASE AND SIMILAR PRECEDENTS THAT

10  DISCOUNT THE PRECEDENTIAL VALUE OF SUCH DECISIONS.

11         ON THE ISSUE OF WAIVER OF SERVICE, YOU KNOW, MR.

12  KHOURI CALLS IT A TECHNICAL MATTER.  BUT IT IS, IN FACT, A

13  MATTER OF PERSONAL JURISDICTION.  THE COURT DOES NOT HAVE

14  JURISDICTION TO IMPOSE ANY RELIEF UNTIL THE GOVERNMENT IS

15  PROPERLY SERVED AND BROUGHT IN TO COURT.  AND THAT IS --

16  LET'S SEE, THAT -- IN ONE OF THE CASES THAT WE CITE THAT

17  POINT IS MADE.

18         THE COURT:  WELL, AND I THINK -- I THINK

19  TECHNICALLY --

20         MR. KORTUM:  I THINK IT'S THE OXFORD CASE --

21         THE COURT: -- YOU'RE ACCURATE.  I MEAN, I THINK

22  THAT THAT IS -- THAT IS A -- I THINK THAT IS -- THAT'S THE

23  STATE OF THE LAW.  I THINK THAT'S WHAT THE RULE SAYS AND

24  THAT'S HOW THE RULE HAS BEEN APPLIED TO THESE -- THIS TYPE OF

25  MATTER.

1          ONE OF MR. KHOURI'S CONCERN THAT YOU HAVE WAIVED

2    THAT ARGUMENT BY NOT MOVING TO QUASH ESSENTIALLY THE MOTION.

3          MR. KORTUM:  WELL, YOUR HONOR, I THINK THAT YOU

4    ACCURATELY STATED THAT IT'S PRUDENT TO OBJECT TO A DEFECT IN

5    SERVICE AND AT THE SAME TIME, YOU KNOW, STATE -- STATE THE

6    POSITION ON THE MERITS.  AND BY DOING THAT, THE GOVERNMENT

7    DOES NOT WAIVE AN OBJECTION TO A DEFECT IN SERVICE.

8          AND THE CASE ON THAT THAT I WAS ABLE TO FIND IS

9    AYRES, A-Y-R-E-S, VERSUS JACOBS CRUMPLAR, 99 F.3D 565 AT PAGE

10   568.  AND THERE'S AN UNPUBLISHED WESTLAW DECISION THAT

11   BASICALLY CITES THAT CASE CALLED PICKET VERSUS CITY OF

12   HOUSTON, 2009 W.L., 1158842, A 2009 DECISION FROM THE

13   SOUTHERN DISTRICT OF TEXAS, WHERE THE COURT SAID THAT THE

14   CITY'S MERE ATTENDANCE AT A HEARING FOR A TEMPORARY

15   RESTRAINING ORDER DOES NOT CONSTITUTE WAIVER OF A SERVICE

16   DEFECT.

17         I THINK THAT, YOU KNOW, IT WOULD BE -- IN TERMS OF

18   -- YOU KNOW, JUDICIAL EFFICIENCY IS BEST SERVED BY, YOU

19   KNOW, STATING AN OBJECTION, WHICH WE'VE CERTAINLY DONE.  WE

20   ADVISED MR. KHOURI WELL -- WELL BEFORE OF THE DEFECT IN

21   SERVICE.  AND HE -- HE BASICALLY BLEW US OFF AND SAID, YOU

22   KNOW, IT'S BASICALLY A TECHNICALITY.  I DON'T THINK THAT IS

23   -- YOU KNOW, GIVEN THAT KIND OF RESPONSE, I DON'T -- I DON'T

24   THINK THAT WE SHOULD BE HELD TO HAVE WAIVED IT.

25         THE COURT:  WELL --

1              MR. KORTUM:  -- HE FORCED US TO GO AHEAD --

2              THE COURT:  -- AND IT'S INTERESTING.  I WOULD AGREE

3      -- I WOULD AGREE WITH HIM THAT IT IS A TECHNICALITY.  AND I

4      AGREE WITH YOU THAT IT'S A VERY IMPORTANT TECHNICALITY.  THE

5      FACT IT'S A TECHNICALITY DOES NOT -- NEITHER -- BOTH OF YOU

6      ARE CORRECT.

7              MR. KORTUM:  RIGHT.  BUT JUST BECAUSE IT'S A

8      TECHNICALITY DOESN'T MEAN IT CAN BE DISREGARDED AS I THINK

9      THE COURT RECOGNIZES.  SO, I WON'T BELABOR THAT POINT.

10             THE COURT:  ALL RIGHT.

11             MR. KORTUM:  LET'S SEE, YOU KNOW, I THINK THAT -- I

12     DON'T WANT TO GET TOO FAR INTO THE MERITS, BUT MR. KHOURI HAS

13     MADE SEVERAL STATEMENTS ABOUT THE ALLEGED HARDSHIP.  AND I

14     THINK IT'S SIGNIFICANT THAT HE HAS NOT SUBMITTED ANY

15     DECLARATIONS TO SUPPORT THAT.

16             THE COURT:  I HAD NOTED THAT AS WELL.  AND I

17     MENTIONED THAT I WANTED TO CIRCLE BACK TO THAT ISSUE.  AND

18     THAT WAS THE -- THAT WAS THE ISSUE I WAS GOING TO CIRCLE BACK

19     TO.

20             MR. KORTUM:  BECAUSE IN -- IN THE -- IN THIS

21     CIRCUIT IN PARTICULAR, UNDER THE CASE OF STANLEY VERSUS

22     UNIVERSITY OF SOUTHERN CALIFORNIA, 13 F.3D 1313, THE NINTH

23     CIRCUIT 1994, THE COURT HELD THAT WHERE A -- YOU KNOW, A

24     PARTY HASN'T HAD AN OPPORTUNITY TO SUBMIT DECLARATIONS, THE

25     COURT -- THERE IS NO NEED FOR THE COURT TO CONDUCT AN

1    EVIDENTIARY HEARING.

2           AND IT'S PRETTY STRONG LAW IN THE NINTH CIRCUIT

3    THAT A PARTY NEEDS TO SUPPORT A REQUEST FOR EQUITABLE RELIEF

4    WITH SWORN TESTIMONY.  THERE'S NO SWORN TESTIMONY HERE.  WE

5    DON'T -- YOU KNOW, IT MAY WELL BE THAT THERE ARE OTHER ASSETS

6    THERE.  AND I -- YOU KNOW, IF THEY WANTED -- IF THEY MADE A

7    SWORN STATEMENT THAT ALL THEIR ASSETS HAD BEEN TAKEN, WE

8    WOULD BE IN A POSITION TO CHALLENGE THAT.  BUT JUST FOR UN-

9    -- COUNSEL'S UNSWORN STATEMENTS ARE NOT A BASIS FOR THE TYPE

10   OF EQUITABLE RELIEF THAT'S BEING SOUGHT HERE.

11          SO, UNLESS THE COURT HAS -- OH, AND FINALLY I GUESS

12   I WOULD SAY THAT MR. KHOURI IS SAYING, WELL, THIS IS NOT A

13   NARCOTICS CASE OR A GAMBLING CASE.  BUT CONGRESS MADE

14   HEALTHCARE FRAUD A SPECIFIED UNLAWFUL ACTIVITY UNDER THE

15   FORFEITURE LAW.  HEALTHCARE FRAUD IS A SERIOUS FINANCIAL

16   PROBLEM FOR THE GOVERNMENT.  AND WE ARE TRYING TO ADDRESS IT

17   HERE WITH THESE -- YOU KNOW, BASICALLY IN OUR CIVIL

18   FORFEITURE COMPLAINT WE WILL BE ALLEGING THAT MR. KHOURI'S

19   CLIENTS WENT OUT AND ACTIVELY SOLICITED THESE NURSING HOMES

20   TO BASICALLY SUBMIT FALSE STATEMENTS ABOUT THE ELIGIBILITY OF

21   THE -- OF THE PATIENTS THAT RECEIVED THESE WHEELCHAIRS WHEN

22   THEY WERE NOT, IN FACT, LIVING IN A HOME ENVIRONMENT.

23          SO --

24          THE COURT:  AND JUST -- JUST SO YOU'RE CLEAR --

25   EVERYONE IS CLEAR -- I -- I WOULD TEND TO AGREE THAT

1   HEALTHCARE FRAUD IS A VERY SERIOUS MATTER.  AND THAT I THINK

2   THE GOVERNMENT IS APPROPRIATELY TRYING TO AGGRESSIVELY POLICE

3   IT.  AND I THINK CIVIL FORFEITURE IS A MEANS AT ITS DISPOSAL

4   TO DO SO.

5           YOU KNOW, THE QUESTION IS I GUESS IF -- IF YOU HAVE

6    -- AND I'M NOT SAYING YOU HAVE, BUT IF YOU HAVE OVERSTEPPED

7   OR OVERREACHED AND CAUSED A TYPE OF HARM TO THESE CLAIMANTS

8   THAT IS IRREPARABLE OR POTENTIALLY IRREPARABLE, WE MAY NEED

9   TO HAVE A PRE-FORFEITURE -- PRE-FORFEITURE PROCEEDING -- A

10  PRE-FORFEITURE PROCEEDING PROCEEDING ABOUT THAT.  AND THAT'S

11  WHAT MR. KHOURI IS ASKING FOR.

12          I'M SORRY TO CUT YOU OFF AGAIN.  ANY ADDITIONAL

13  COMMENTS --

14          MR. KORTUM:  BUT LET ME SPEAK TO --

15          THE COURT:  -- MR. KORTUM.

16          MR. KORTUM:  -- WHAT YOU'VE JUST SAID, YOUR HONOR.

17          THE 41(G) PROCEDURE WILL -- I WOULD SUBMIT THAT

18  IT'S CUT OFF BY THE INITIATION OF ADMINISTRATION FORFEITURE

19  PROCEEDINGS.  I THINK THAT THAT'S THE CASE THAT WE CITE IN

20  OUR PAPERS.  THAT CERTAINLY WILL BE CUT OFF BY THE FILING OF

21  A CIVIL FORFEITURE COMPLAINT.

22          MR. KHOURI IN HIS PAPERS HAS CITED A PETITION FOR

23  RETURN OF PROPERTY UNDER SECTION 983(F), WHICH IS NOT -- YOU

24  KNOW, COULD STILL BE FILED EVEN IF A CIVIL FORFEITURE

25  COMPLAINT IS FILED.  BUT HE -- HE DOES NOT MEET MANY OF THE

1    REQUIREMENTS OF THAT SUBSECTION, ONE OF WHICH IS TO SHOW

2    SUBSTANTIAL TIES TO THE COMMUNITY; ANOTHER OF WHICH IS TO

3    SHOW THAT THE GOVERNMENT WILL BE PROTECTED DURING THE

4    PENDENCY OF THE FORFEITURE CASE THROUGH SOME TYPE OF BOND OR

5    INSURANCE OR SOMETHING LIKE THAT.  HE HAS NOT MADE THAT

6    SHOWING.  AND I HAVE STRONG DOUBTS THAT HE WOULD BE ABLE TO.

7            BUT THERE WAS A -- THAT IS A REMEDY AVAILABLE TO

8    HIM.  HE HAS SAID THAT HE INTENDS TO AVAIL HIMSELF OF THAT

9    REMEDY.

10           THE COURT:  BUT THAT'S ALSO A REMEDY --

11           MR. KORTUM:  I AWAIT WITH INTEREST HOW HE INTENDS

12   --

13           THE COURT:  THAT'S A REMEDY -- THAT'S A REMEDY IN

14   THE FORFEITURE PROCEEDING, CORRECT?

15           MR. KORTUM: -- TO OVERCOME THOSE --

16           THE COURT:  MR. KORTUM --

17           MR. KORTUM: -- PROBLEMS THAT I'VE JUST --

18           THE COURT: -- JUST SO -- JUST SO I UNDERSTAND.

19           MR. KORTUM: -- IDENTIFIED.

20           THE COURT:  MR. KORTUM, JUST SO I UNDERSTAND, THAT

21   983(F) REMEDY IS NOT A REMEDY IN THIS PROCEEDING.  THAT'S A

22   REMEDY IN THE FORFEITURE PROCEEDING.

23           MR. KORTUM:  YES, YOUR HONOR.

24           MR. KHOURI:  I BELIEVE -- I BELIEVE THE COURT IS

25   CORRECT.

1        MR. KORTUM:  BUT HE HAS -- HE HAS BASICALLY SAID

2    THAT -- HE HAS ADMITTED THAT HE'S NOT ENTITLED TO A 41(G)

3    REMEDY.  HE HAS SAID THIS IS NOT A 41(G) MOTION.

4        THE COURT:  WELL, HE'S SAYING THAT BECAUSE -- I

5    THINK HE'S SAYING THAT IN CANDOR.  I THINK HE'S SAYING THAT

6    IN CANDOR BECAUSE HE'S TRYING TO AVOID THE SERVICE

7    REQUIREMENT IN --

8        MR. KORTUM:  WELL, BUT ALSO THE ADEQUATE REMEDY AT

9    LAW DOCTRINE THAT APPLIES ONCE THE ADMINISTRATIVE FORFEITURE

10    PROCEEDINGS HAVE BEEN INITIATED AND CERTAINLY ONCE A CIVIL

11    FORFEITURE COMPLAINT IS FILED.

12        SO, THERE IS A SERVICE DEFECT.  AND THERE IS ALSO

13    THE ADEQUATE REMEDY AT LAW DOCTRINE THAT HE HAS TO OVERCOME,

14    NEITHER OF WHICH I THINK HE'S GOING TO BE ABLE TO DO TODAY.

15        AND, YOU KNOW, WHETHER HE WANTS -- HE HAS SAID HE

16    WANTS TO FILE A 983(F).  I THINK -- I BELIEVE -- I'VE BEEN

17    INFORMED THAT HE HAS MADE THE INITIAL STEPS TOWARD THAT BY

18    SENDING A PETITION TO THE FBI.  AND ONCE THE FBI ACTS ON

19    THAT, THEN, HE'S FREE TO COME TO THIS COURT -- YOU KNOW, IF

20    HE CAN, YOU KNOW, SHOW THAT THE GOVERNMENT WILL RECEIVE SOME

21    PROTECTION FROM HAVING THE ASSETS DISSIPATED.

22        THE COURT:  OKAY.

23        MR. KORTUM:  WITH THAT, UNLESS THE COURT HAS

24    FURTHER QUESTIONS, I WOULD BE -- I WOULD SUBMIT.

25        THE COURT:  ALL RIGHT.  THANK YOU, MR. KORTUM.

1     ADDITIONAL COMMENTS, MR. KHOURI?

2     MR. KHOURI:  YES, YOUR HONOR.  JUST BRIEFLY.

3     FIRST OF ALL, MR. KORTUM DID ADVISE US OF HIS

4 BELIEF THAT THE SERVICE WAS DEFECTIVE.

5     THE COURT:  I SAW IT.  AND I THINK I SAW THAT.

6     MR. KHOURI:  YEAH.  RIGHT.

7     THE COURT:  I THINK AT SOME POINT THE PARTIES --

8     MR. KHOURI:  AND --

9     THE COURT:  -- PROVIDED ME WITH SOME --

10     MR. KHOURI:  RIGHT.

11     THE COURT:  -- DISCOURSE.

12     MR. KHOURI:  AND TO SAY THAT I BLEW HIM OFF WAS --

13 I DON'T THINK IS COMPLETELY ACCURATE.

14     THE COURT:  AND I --

15     MR. KHOURI:  I -- I WOULDN'T --

16     THE COURT: -- DON'T -- I DON'T TAKE THAT AS A --

17     MR. KHOURI:  MY ASSOCIATE IN DALLAS DID ANALYZE THE

18 ISSUE BY WAY OF EMAIL.

19     I THINK THERE'S A MORE FUNDAMENTAL ISSUE HERE.  AND

20 I WANT TO MAKE THE RECORD CLEAR.  I THINK IT'S MADE IN OUR

21 SUPPLEMENTAL BRIEF.  BUT THE REAL FUNDAMENTAL BASIC ISSUE

22 BEFORE THE COURT IF THE COURT CHOOSES TO DEAL WITH IT AFTER

23 THE SERVICE ISSUE IS THE BASIC FAIRNESS, THE BASIC

24 CONSTITUTIONALITY UNDER THE DUE PROCESS CLAUSE AND EQUAL

25 PROTECTION CLAUSE OF THE GOVERNMENT BEING ABLE TO COME INTO

1   COURT WITHOUT NOTICE, WITHOUT A SHOWING OF SOME CLEAR AND

2   PRESENT DANGER TO THE SAFETY OF THE COMMUNITY LIKE IN AN

3   ORGANIZED CRIME NARCOTICS CASE OR A TERRORISM CASE OR A CASE

4   LIKE THAT AND WITHOUT GIVING THE OPPOSITION A CHANCE TO

5   RESPOND, TO TAKE THE PROPERTY AWAY.  THIS IS NOT A SEARCH

6   WARRANT.

7          THAT'S REALLY THE FUNDAMENTAL QUESTION THAT WE WANT

8   THIS COURT TO DECIDE AND OTHER COURTS TO DECIDE ABOUT THE USE

9   OF THIS CIVIL FORFEITURE SEIZURE WARRANT TO TAKE PEOPLE'S

10  PROPERTY AWAY.  HAD THEY CHOSEN TO -- BECAUSE THERE'S

11  DIFFERENT CATEGORIES NOW.

12         ONE CATEGORY IS PEOPLE THAT THE GOVERNMENT CHOOSE

13  TO SUE, EITHER IN A CIVIL FORFEITURE PROCEEDING OR IN A FALSE

14  CLAIMS ACT CASE WHERE THE GOVERNMENT IS THE PLAINTIFF, OR IN

15  A FALSE CLAIMS ACT CASE WHERE THE GOVERNMENT HAS MAYBE

16  INTERVENED ON BEHALF OF A PRIVATE RELATOR.

17         AND ONE CATEGORY IS PEOPLE LIKE THE TUCKERS.  AND

18  IF YOU'RE LUCKY ENOUGH TO BE IN THE FIRST CATEGORY, YOU GET

19  TO COME INTO COURT.  AND YOU GET TO PRESENT PAPERS.  AND YOU

20  MIGHT EVEN BE ABLE TO HAVE TESTIMONY FROM THE WITNESS STAND.

21  AND THE COURT GETS TO HAVE THE VIEW OF BOTH SIDES AND MAKE A

22  DECISION.

23         IF YOU'RE UNLUCKY ENOUGH TO BE IN THE TUCKERS'

24  CATEGORY, WHICH IS COMPLETELY AN ARBITRARY DECISION OF THE

25  GOVERNMENT, THEN, YOU DON'T HAVE THOSE RIGHTS.  YOU DON'T

1    HAVE A CHANCE.  YOU GO TO THE ATM WHEN YOUR WIFE IS GETTING

2    OUT OF THE HOSPITAL TO GET HER HER PAIN MEDICATION, AND

3    NOTHING COMES OUT.

4            NOW, I CAN'T BELIEVE THAT THE COURT WOULDN'T HAVE

5    -- AND I KNOW THE COURT WOULDN'T HAVE WANTED -- WOULD HAVE

6    WANTED TO SEE THESE ALJ DECISIONS BEFORE IT SIGNS A DOCUMENT

7    WITH SUCH DRASTIC CONSEQUENCES AS THAT SEIZURE WARRANT.

8            AND COUNSEL MAKES MENTION -- THE GOVERNMENT MAKES

9    MENTION OF THE ADMINISTRATIVE LAW JUDGES.  WELL, THE REASON

10   WE HAVE ADMINISTRATIVE LAW JUDGES IS BECAUSE, NUMBER ONE, THE

11   COURT -- THE FEDERAL COURTS WOULD BE INUNDATED BY SUCH ISSUES

12   IF THE FEDERAL COURTS HAD TO HANDLE THAT.

13           BUT THERE'S EVEN A MORE SIGNIFICANT REASON.  YOU

14   SEE IT NOT ONLY IN PROFESSIONAL LICENSING AT THE STATE OFFICE

15   OF ADMINISTRATIVE HEARINGS.  YOU SEE IT IN THE SOCIAL

16   SECURITY ADMINISTRATION WHERE THE MEDICARE ADMINISTRATIVE LAW

17   JUDGES HEAR MATTERS DEALING WITH MEDICARE REIMBURSEMENT.

18   THEY MAY HEAR MATTERS DEALING FROM MEDICARE BENEFICIARIES

19   ABOUT WHETHER OR NOT THEIR BENEFITS HAVE BEEN PROPERLY GIVEN.

20   YOU MAY HAVE ADMINISTRATIVE LAW JUDGES IN BOTH THE FEDERAL

21   AND STATE SYSTEM THAT HEAR PERSONNEL CLAIMS.  IT'S BECAUSE

22   CONGRESS HAS DECIDED, HEY, A LOT OF THESE CLAIMS ARE BETTER

23   HANDLED BY THE ADMINISTRATIVE AGENCIES THROUGH THEIR

24   ADMINISTRATIVE LAW JUDGES WHO KNOW THE SUBSTANTIVE LAW, WHO

25   KNOW HOW THESE BENEFITS ARE ADMINISTERED, WHO KNOW THE

1   MEDICARE REGULATIONS, WHO KNOW THE ISSUES REGARDING MEDICARE

2   BILLING, THE PROCEDURE CODES THAT ARE USED TO BILL MEDICARE

3   AND THE DIAGNOSIS CODES THAT ARE USED TO SHOW MEDICARE WHAT'S

4   WRONG WITH THE PATIENT AND WHY THE PROCEDURE WAS NECESSARY,

5   THE EVALUATION AND MANAGEMENT CODES.

6        THERE'S A WHOLE BIG -- AND I DON'T KNOW.  THE COURT

7   MAY BE FAMILIAR WITH THIS.  I'M SORRY IF IT IS, BUT THERE'S A

8   WHOLE LANGUAGE THAT'S USED TO COMMUNICATE TO MEDICARE WHY

9   THEY SHOULD PAY MONEY TO THIS DOCTOR OR THIS COMPANY.

10       THE COURT:  I --

11       MR. KHOURI:  THESE JUDGES ARE --

12       THE COURT:  I AM FAMILIAR WITH IT.  AND LET ME --

13       MR. KHOURI:  -- ARE SPECIALISTS --

14       THE COURT:  LET ME -- LET ME -- I UNDERSTAND THESE

15  JUDGES ARE SPECIALISTS.  AND I GUESS I SHOULD -- I SHOULD SAY

16  I'M VERY THANKFUL THAT THESE JUDGES EXIST.

17       AND I AM NOT -- I THINK MR. KORTUM RAISES A CORRECT

18  POINT THAT THESE DECISIONS ARE PROBABLY NOT BINDING PRECEDENT

19  ON THIS COURT.  THAT'S PROBABLY CORRECT.

20       AT THE SAME TIME IF, AS YOU REPRESENT, THERE ARE A

21  WHOLE SERIES OF DECISIONS -- AND YOU'VE PROVIDED I THINK

22  THREE.  I DON'T KNOW IF THREE IS ALL OF THEM OR IF THERE'S

23  MORE THAN THREE WHERE, YOU KNOW, THE TUCKERS AND CAIR'S

24  PROVISION OF THESE WHEELCHAIRS HAS BEEN REVIEWED, VETTED, AND

25  ESSENTIALLY APPROVED BY THESE ALJS -- WELL, THAT'S, YOU KNOW

1    -- AND I THINK PARTICULARLY TO THE EXTENT THEY'RE RELYING ON

2    THE ALJ'S INTERPRETATION OF THE REGULATION AND ITS -- AND

3    WHETHER THESE PARTICULAR TYPES OF BENEFICIARIES ARE ELIGIBLE

4    FOR MEDICARE REIMBURSEMENT, I MEAN, I THINK THAT -- THAT'S

5    ONE -- AGAIN, WE'RE TALKING ABOUT TWO DIFFERENT THEORIES --

6    THE GOVERNMENT HAD TWO DIFFERENT THEORIES OF FRAUD.  THAT'S

7    ONE OF THEM.  THE OTHER ONE IS JUST MORE OF A MEDICAL

8    NECESSITY ISSUE.

9            EVEN IF THE ALJ FOUND IN INSTANCE A OR INSTANCE B

10   THAT THE CHAIR WAS MEDICALLY NECESSARY, THAT DOES NOT MEAN

11   THAT THERE WOULD NOT BE -- THERE COULD NOT BE FRAUD IN A

12   MYRIAD OF OTHER MATTERS.

13           BUT LET'S PUT THAT -- ALL THE ISSUES ASIDE.  I DO

14   UNDERSTAND THAT.

15           MR. KHOURI:  AND --

16           THE COURT:  I GET IT.  AND I THINK THE BIGGER --

17   YOU'RE ASKING -- AND I THINK YOU UNDERSTAND THIS.  YOU ARE

18   TAKING -- AND IT MAY BE THAT YOU'RE SIMPLY TRYING TO PRESERVE

19   WITH ME AN ARGUMENT THAT YOU NEED TO MAKE TO A MUCH MORE

20   LOFTY COURT.

21           BUT, YOU KNOW, THESE ARGUMENTS ABOUT THE

22   CONSTITUTIONALITY OF THE CIVIL FORFEITURE PROCESS ARE -- I

23   DON'T WANT TO SAY -- IT'S NOT CORRECT TO SAY THEY'RE ABOVE MY

24   PAY GRADE, BUT I THINK THAT THEY ARE FOR -- THEY ARE FOR

25   PEOPLE WHO SIT ON MULTI-MEMBER COURTS.

1          MR. KHOURI:  RIGHT.

2          THE COURT:  AND I ALSO THINK, AND I SUSPECT THAT

3     MR. KORTUM WOULD SAY THAT THE CIVIL FORFEITURE STATUTE HAS

4     BEEN AROUND FOR A LONG TIME, AND IT HAS BEEN SUBJECTED TO

5     NUMEROUS CHALLENGES, AND IT STILL WITHSTANDS THOSE

6     CHALLENGES.  AND THIS PROCESS HAS BEEN -- THE

7     CONSTITUTIONALITY OF THIS PROCESS HAS BEEN TESTED.

8          IN ANY EVENT --

9          MR. KHOURI:  AND I --

10         THE COURT:  ONE OTHER COMMENT -- ONE OTHER QUESTION

11    FOR YOU.  I DO THINK -- I DO THINK IT'S CORRECT AND FAIR TO

12    FAULT YOUR SHOWING -- EVIDENTIARY SHOWING WITH RESPECT TO

13    IRREPARABLE INJURY.  I DON'T THINK THE COURT CAN SIMPLY SAY

14    -- I'M NOT DISPUTING THE VERACITY OF YOUR ACCOUNT, BUT I

15    THINK THE COURT NEEDS SOME AFFIDAVITS OR DECLARATIONS AND

16    EXHIBITS TO VERIFY SOME OF THE VERY COMPELLING EQUITABLE

17    FACTS THAT YOU REPRESENTED, SUCH AS, YOU KNOW, WE HAVE 50

18    EMPLOYEES WHO'VE LOST THEIR JOBS, ET CETERA, ET CETERA, ET

19    CETERA.

20         MR. KHOURI:  IT'S ACTUALLY 35.

21         THE COURT:  OKAY.  AND, SO, I THINK -- I THINK THAT

22    THAT'S SOMETHING WE NEED TO TAKE AWAY FROM TODAY.  YOU KNOW,

23    THERE'S NOTHING ABOUT MY RULING THAT THIS HEARING NEEDS TO BE

24    CONTINUED THAT FORECLOSES YOU FROM SUBMITTING THAT

25    INFORMATION MORE QUICKLY.

1          AND, LIKEWISE, AS I SAID AT THE OUTSET, THERE'S

2    NOTHING ABOUT THIS SITUATION THAT FORECLOSES -- I MEAN, MAYBE

3    IT WILL BE THAT A DECLARATION TO THAT EXTENT COULD BE USED

4    NOT ONLY IN THIS PROCEEDING BUT IN OTHER PROCEEDINGS.

5          IN ANY EVENT -- OKAY.  I DON'T WANT TO INTERRUPT

6    YOUR RESPONSE TO MR. KORTUM'S COMMENTS.

7          MR. KHOURI:  AND WE WOULD BE VERY HAPPY IF WE COULD

8    GET AN EVIDENTIARY HEARING.  WE COULD DO IT BY DECLARATION OR

9    WE COULD DO IT BY EVIDENTIARY HEARING.  I'D BE HAPPY TO

10   SUBMIT THAT TO THE COURT.

11         I THINK -- I NEED TO KNOW HOW THE COURT IS GOING TO

12   RULE ON THE SERVICE ISSUE, WHETHER THE COURT -- IF THE COURT

13   RULES -- HOPEFULLY, THE COURT DOES NOT RULE AGAINST US, BUT

14   IF THE COURT DOES, THEN, I WOULD LIKE TO KNOW IF THE COURT IS

15   JUST GOING TO DEEM THAT SERVICE HAS BEEN MADE AND CONTINUE

16   THE CASE FOR 75 DAYS, OR WHETHER WE NEED TO GO THROUGH THE

17   SERVICE OF THE U.S. ATTORNEY GENERAL --

18         THE COURT:  BUT WHAT I'M --

19         MR. KHOURI:  I'M SURE MR. HOLDER IS VERY MUCH

20   WAITING FOR US TO GET THIS --

21         THE COURT:  WHAT I'M INCLINED TO DO IS TAKE THE

22   MATTER UNDER SUBMISSION.  I DO WANT TO LOOK --

23         MR. KHOURI:  ALL RIGHT.

24         THE COURT:  I DO WANT TO LOOK AT THE MATERIALS THAT

25   -- I WANT TO TAKE A LOOK AT THE ARGUMENT YOU MADE.  I WANT

1    TO TAKE A LOOK AT THE MATERIALS MR. KORTUM HAS MADE.  AND IF

2    I NEED TO DO MY OWN RESEARCH, I WILL.

3           I EXPECT TO GET SOMETHING TO YOU VERY, VERY QUICKLY

4    LATER TODAY OR MONDAY.

5           MR. KHOURI:  ALL RIGHT.

6           THE COURT:  AND I WILL -- IF I -- YOU KNOW, ONE

7    SCENARIO IS I BELIEVE WE DON'T NEED TO DO SERVICE AND WE WILL

8    THEN HAVE -- I WILL THEN ESSENTIALLY PROBABLY SET FORTH SOME

9    EXPEDITED BRIEFING AND HEARING SCHEDULE TO REACH AND DISCUSS

10    THE MERITS.

11           IF I DECIDE THAT SERVICE IS NECESSARY, THEN, I'M

12    GOING TO ORDER YOU TO MAKE SERVICE, AND I'M GOING TO CONTINUE

13    THE HEARING TO A DATE IN ROUGHLY LATE -- LATE FEBRUARY, EARLY

14    MARCH, WHICH WILL BE THE EARLIEST THAT -- EARLIEST ABSENT MR.

15    KORTUM RESPONDING EARLY THAT I COULD HEAR THE MATTER.

16           MR. KHOURI:  RIGHT.

17           THE COURT:  I DON'T THINK THAT -- I DON'T THINK

18    THAT I'M INCLINED -- I'M NOT INCLINED TO -- BASED ON YOUR

19    REPRESENTATIONS ABOUT THE EQUITABLE SITUATION HERE, I'M NOT

20    INCLINED TO HAVE THE PARTIES SIT AROUND DURING THIS 75-DAY

21    PERIOD.  I MEAN, WE'RE GOING TO HAVE -- WE'RE GOING TO DO --

22    WE'RE GOING TO PREPARE THE CASE SO I'M READY TO HEAR IT AS

23    SOON AS I CAN.

24           MR. KHOURI:  ALL RIGHT.

25           THE COURT:  NOW, AS A PRACTICAL MATTER, THAT

1    PASSAGE OF TIME MAY -- IT MAY NOT -- BUT IT MAY RESULT IN THE

2    INITIATION OF ANOTHER PROCEEDING, A FORFEITURE PROCEEDING

3    THAT ESSENTIALLY ALTERS THE LANDSCAPE OF THINGS AND GIVES YOU

4    OTHER REMEDIES, SUCH AS THAT 983(F) WE DISCUSSED.

5              MR. KHOURI:  RIGHT.

6              THE COURT:  AND MAYBE THAT YOU ARE ABLE TO AVAIL

7    YOURSELF OF THAT REMEDY MORE QUICKLY THAN THIS REMEDY.  AND

8    I'M NOT GOING TO -- THERE'S NOTHING TO -- AT THAT POINT THE

9    BALL IS IN YOUR COURT TO DECIDE WHERE AND TO WHOM YOU WANT TO

10   GO.  BECAUSE I PRESUME A CIVIL FORFEITURE PROCEEDING WILL BE

11   ASSIGNED TO THE DISTRICT -- TO A RANDOM -- IT'S GOING TO BE A

12   NEW MATTER.  IT'S GOING TO BE RANDOMLY ASSIGNED TO A DISTRICT

13   JUDGE I WOULD PRESUME.

14             I DON'T KNOW THE COURT'S PRACTICE FOR RELATING

15   THOSE MATTERS TO THE MOTIONS FOR RETURN OF PROPERTY.  SO, I

16   DON'T KNOW WHETHER IT WILL BE RELATED TO JUDGE CARTER OR

17   MYSELF.

18             BUT THAT WILL BE IN FRONT OF THE DISTRICT JUDGE,

19   AND I WILL BE ESSENTIALLY THE DISCOVERY JUDGE FOR THAT.

20             SO, THAT'S THE STATUS OF THINGS I THINK.  SO, I

21   WANT TO TAKE A LOOK AT THE SERVICE ISSUE.  I WANT TO MAKE

22   SURE WE GET THAT RIGHT.  I DO THINK FUNDAMENTALLY THAT IS A

23   THRESHOLD ISSUE THAT HAS TO BE --

24             MR. KHOURI:  DECIDED.

25             THE COURT:  -- ADDRESSED, YES.

```
 1               MR. KHOURI:  YES.

 2               MR. KORTUM:  YOUR HONOR --

 3               MR. KHOURI:  AND -- ALL RIGHT, YOUR HONOR.  THANK

 4    YOU.

 5               THE COURT:  ALL RIGHT.

 6               MR. KHOURI:  THANK YOU FOR ACCOMMODATING MY

 7    SCHEDULE.  AND I'D LIKE TO THANK MS. STEELE FOR HELPING ME

 8    OUT TOO.

 9               MR. KORTUM:  YOUR HONOR --

10               THE COURT:  YES.

11               MR. KORTUM, GO AHEAD.

12               MR. KORTUM:  AS A PRACTICAL MATTER, I'M CONCERNED

13    ABOUT HAVING TO -- I HAVE ABOUT THREE WEEKS OF A PREPLANNED

14    VACATION COMING UP THAT I CAN'T REALLY CANCEL WITHOUT A

15    SIGNIFICANT FINANCIAL LOSS.  SO, I'M CONCERNED THAT --

16               THE COURT:  WHEN'S THAT, MR. KORTUM?

17               MR. KORTUM:  STARTING THE 22ND.  YOU KNOW, IT'S

18    BASICALLY OVER THE HOLIDAYS.

19               THE COURT:  ALL RIGHT.  WELL, YOU KNOW, I THINK

20    THAT THERE'S TWO POSSIBILITIES HERE.  ONE IS, I MEAN, YOU

21    KNOW YOU'RE NOT THE ONLY AUSA IN THE ASSETS -- AS YOU KNOW, I

22    WAS AN AUSA FOR A LONG TIME.  AND THE GOOD NEWS OR BAD NEWS

23    ABOUT BEING AN AUSA IS THAT YOU ARE FUNGIBLE AND SOMEONE ELSE

24    CAN CARRY ON IN YOUR STEAD IF NEED BE.

25               I DON'T KNOW THAT WE'RE IN A POSITION WHERE IF I
```

1   FEEL LIKE -- PARTICULARLY IF I GOT SOME INFORMATION IN A

2   SWORN MATTER FROM MR. KHOURI ABOUT THE -- IF I DECIDED THAT

3   WE COULD PROCEED WITHOUT SERVICE, AND IF I GOT SOME

4   INFORMATION FROM MR. KHOURI ABOUT AN IRREPARABLE INJURY, I'M

5   IN A POSITION WHERE I DON'T THINK I COULD SIT AROUND FOR VERY

6   LONG IN GOOD CONSCIENCE AND NOT GET TO THE MERITS OF THIS.

7          SO, I THINK THE THRESHOLD ISSUE I HAVE TO ADDRESS

8   IS THE SERVICE -- THE 4(I) SERVICE ISSUE.  SO, I WANT TO DO

9   THAT, AND I WANT TO DO IT AS QUICKLY AS POSSIBLE.

10          MR. KORTUM:  YES.  I THINK THAT THE, YOU KNOW, THE

11  CASES I'VE CITED REALLY EMPHASIZE THE IMPORTANCE OF SERVICE

12  AS A PERSONAL JURISDICTIONAL MATTER.  SO --

13          THE COURT:  AND I UNDERSTAND THAT.  AND ULTIMATELY

14  JURISDICTION IS WHAT -- IS WHAT KEEPS THE LIGHTS ON.  SO, WE

15  HAVE TO HAVE JURISDICTION.  AND IF THE FAILURE OF SERVICE

16  MEANS WE DON'T, THEN, WE SIMPLY CAN'T GO FORWARD.  AND WE'LL

17  DEAL WITH IT AT THAT POINT.

18          ALL RIGHT.  SO, LET ME GET AN ORDER TO THE PARTIES.

19  I HAVE SOMETHING THAT'S ALREADY SORT OF STARTED.  BUT IF I

20  CAN TAKE A LOOK AT THIS ISSUE AND BUTTON IT UP.  AND WE'LL

21  GIVE IT TO YOU ONE WAY OR THE OTHER, AND WE'LL SET A ROADMAP

22  FOR GOING FORWARD, AND WE'LL GO FROM THERE.

23          ALL RIGHT.

24          THANK YOU BOTH VERY MUCH.

25          MR. KHOURI:  THANK YOU, YOUR HONOR.

40

1           MR. KORTUN:  THANK YOU, YOUR HONOR.

2           THE CLERK:  THIS COURT IS NOW ADJOURNED.

3           (PROCEEDINGS CONCLUDED 10:49 A.M.)

4

5

6

7                    C E R T I F I C A T E

8

9           I CERTIFY THAT THE FOREGOING IS A CORRECT
TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE
10 PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

11

12 /S/ DOROTHY BABYKIN                    1/18/15

13 _____       _____
FEDERALLY CERTIFIED TRANSCRIBER         DATED
14 DOROTHY BABYKIN

15

16

17

18

19

20

21

22

23

24

25